KATHY FOSTER, EMPLOYEE-PLAINTIFF-APPELLEE v. U.S. AIRWAYS, INC., EMPLOYER-DEFENDANT-APPELLANT, SEDGWICK CMS, ADMINISTRATOR-APPELLANT

No. COA00-1448

(Filed 7 May 2002)

## 1. Workers' Compensation— total disability—partial earning capacity—maximum medical improvement

The Industrial Commission did not err in a workers' compensation case by awarding total disability benefits to plaintiff employee under N.C.G.S. § 97-29, because: (1) even though defendant employer contends the Commission's findings demonstrate that plaintiff has partial earning capacity, the record does not reflect any employment and the Commission made no findings that plaintiff had resumed any employment during her period of disability; and (2) even though defendant employer contends it was error to award temporary total disability benefits after plaintiff reached maximum medical improvement, defendant employer has not met its burden of proving that plaintiff has regained wage earning capacity.

## 2. Workers' Compensation— propriety of administrative decision and order—termination or suspension of compensation—res judicata

The doctrine of res judicata did not bar the Industrial Commission from reviewing the propriety of a 14 November 1995 administrative decision and order in a workers' compensation case suspending compensation and the Commission did not err when it determined that the administrative decision and order was improvidently entered, because: (1) Workers' Compensation Rule 703 provides that decisions on applications to approve the termination or suspension of compensation may be raised and determined at a subsequent hearing; and (2) the parties stipulated

that the propriety of the 14 November 1995 order was one issue for the full Commission to address.

### 3. Workers' Compensation— suitable jobs—educational pursuits a proper form of vocational rehabilitation

The Industrial Commission did not err in a workers' compensation case by concluding that no suitable jobs were available for plaintiff employee and that her educational pursuits were a proper form of vocational rehabilitation under N.C.G.S. § 97-25, because: (1) it was proper for the Commission to consider pre-injury and post-injury wages to determine whether post-injury employment leads were suitable employment; (2) a claimant does not unjustifiably refuse suitable employment where that claimant was offered the same salary as her pre-injury position salary but without the same or similar opportunity for income advancement; and (3) it is within the Industrial Commission's discretion to determine whether a rehabilitative service will effect a cure, give relief, or will lessen a claimant's period of disability.

### 4. Workers' Compensation— findings of fact—competent evidence

The Industrial Commission's findings of fact numbers 2, 10, 11, 12, 13, and 15 in a workers' compensation case are supported by competent evidence, because: (1) the evidence shows that plaintiff employee would have started at the lower end of the pay scale for a reservationist position, which was not comparable to the salary she received as a flight attendant; (2) all rehabilitation professionals assigned to plaintiff by defendant employer expressed the belief that plaintiff would never earn the same wages without retraining; and (3) the evidence reveals that when the rehabilitation specialists were unable to secure job leads for positions with wages comparable to those plaintiff received as a flight attendant, the specialists pursued job leads for positions with lower paying salaries.

Appeal by defendant from opinion and award entered 21 July 2000 by the North Carolina Industrial Commission. Heard in the Court of Appeals 10 October 2001.

*Janet H. Downing, PA, by Janet H. Downing, for plaintiff.*

*Patterson, Harkavy & Lawrence, LLP, by Martha A. Geer, for plaintiff.*

*Brooks, Stevens & Pope, P.A., by Michael C. Sigmon and Matthew P. Blake, for defendant-appellants.*

BRYANT, Judge.

## Procedural history

On 14 June 1993, plaintiff Kathy Foster was employed as a flight attendant with defendant U.S. Airways, Inc., when she suffered a shoulder and cervical spine strain. Plaintiff's claim was accepted in a Form 21 agreement, which the North Carolina Industrial Commission (Commission) approved on 27 October 1993. The Form 21 stated the defendant would pay benefits of $435.90 per week for the "necessary" number of weeks. On 9 June 1994, the Commission completed and approved a Form 26 supplemental agreement which stipulated that plaintiff returned to work on 30 August 1993, but became totally disabled on 5 January 1994. In addition, the Form 26 stipulated that plaintiff was to receive temporary total disability benefits at the rate of $435.90 per week for "necessary" weeks.

On 2 October 1995, defendant filed a Form 24 application to suspend plaintiff's disability benefits. By administrative decision and order filed 14 November 1995, defendant's Form 24 application was denied. On 4 December 1995, defendant appealed the 14 November 1995 administrative decision and order by filing a Form 33 request for hearing.

On 26 August 1996, defendant filed a second Form 24 application to suspend plaintiff's disability benefits. By administrative decision and order filed 23 October 1996, defendant's second Form 24 application was approved. On 25 October 1996, plaintiff appealed the 23 October 1996 administrative decision and order by filing a Form 33 request for hearing.

Plaintiff's appeal was heard on 11 February 1997 before Deputy Commissioner Lorrie L. Dollar. By opinion and award filed 8 January 1998, Deputy Commissioner Dollar affirmed the suspension of plaintiff's disability benefits. On 20 January 1998, plaintiff filed notice of appeal to the North Carolina Court of Appeals, however, the Commission treated this filing as notice of appeal to the Full Commission.

On 13 July 1998, the Full Commission heard plaintiff's appeal, and by opinion and award filed 21 July 2000, set aside the 23 October 1996 administrative decision and order as being improvidently entered,

and granted plaintiff's request for reinstatement of her disability benefits. Defendant gave notice of appeal to this Court on 18 August 2000.

## Facts

Plaintiff was employed as a flight attendant for defendant for eleven years with an average salary of $35,000 per year. On 14 June 1993, plaintiff sustained a shoulder and cervical strain when the aircraft on which she was working was jolted by a "tug" pushing the aircraft away from a flight gate. Plaintiff subsequently underwent vertebral fusion surgery on two levels of her spine. Dr. Curling, the surgeon who performed the vertebral fusion surgery, released plaintiff from his care on 13 January 1995, when plaintiff reached maximum medical improvement (MMI). Dr. Curling imposed restrictions including that plaintiff was prohibited from lifting anything over forty pounds. Consequently, plaintiff was unable to meet the lifting requirements for the flight attendant position, and could not return to work as a flight attendant.

On 2 February 1995, defendant hired Comprehensive Rehabilitation Association (CRA) to assist plaintiff in obtaining employment. In addition, plaintiff independently contracted with the North Carolina Department of Vocational Rehabilitation (DVR) for vocational training. DVR specialist Lloyd Rollins concluded that plaintiff did not have the educational background or skills to obtain employment in another field with wages similar to wages she previously received as a flight attendant.

In February 1995, Melanie K. Hassell became plaintiff's vocational rehabilitation counselor with CRA. At an April 1995 meeting, Hassell instructed plaintiff to conduct an independent job search. Plaintiff told Hassell that she was interested in completing a bachelor's degree in social work, and inquired whether defendant and the administrator at that time (Alexsis) would authorize her return to college. On 6 June 1995, Hassell informed plaintiff that defendant and Alexsis would not pay for her to return to college. However, prior to receiving a response from Hassell, plaintiff enrolled as a full-time student at Mitchell Community College located in Statesville, North Carolina.

Defendant filed a second Form 24 application seeking to suspend plaintiff's disability benefits alleging that plaintiff's unauthorized class work interfered with her obligation to search for employment. By administrative decision and order filed 14 November 1995,

**FOSTER v. U.S. AIRWAYS, INC.**

[149 N.C. App. 913 (2002)]

defendant's Form 24 application was denied; however, plaintiff was ordered to

> use all good faith efforts to comply with vocational rehabilitation in this case. *North Carolina General Statute Section 97-25.* Plaintiff is to keep all appointments with the vocational counselors and follow the directions given by the vocational counselor. Plaintiff has been released to return to work and IT IS FURTHER ORDERED that Plaintiff is to use all good faith efforts to assist in locating a job which is within her restrictions. *Russell v. Lowes Product Distribution,* 108 N.C. App. 762 (1993).

In February 1996, plaintiff failed to apply for a position that Hassell recommended, however, Hassell continued to seek employment for plaintiff. In July 1996, Dan Hefner of CRA informed plaintiff about a reservationist position that was within plaintiff's job restrictions and paid a wage comparable to her wages as a flight attendant. The Full Commission found that the plaintiff was never officially offered the reservationist position. During this time, plaintiff pursued very few, if any, independent job searches.

### Standard of review

Opinions and awards of the Commission are reviewed to determine whether competent evidence exists to support the Commission's findings of fact, and whether the findings of fact support the Commission's conclusions of law. *See Deese v. Champion Int'l Corp.,* 352 N.C. 109, 114, 530 S.E.2d 549, 552 (2000). If supported by competent evidence, the Commission's findings are binding on appeal even when there exists evidence to support findings to the contrary. *Allen v. Roberts Elec. Contr'rs,* 143 N.C. App. 55, 60, 546 S.E.2d 133, 137 (2001); *Adams v. AVX Corp.,* 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). The Commission's conclusions of law are reviewed *de novo. Allen,* 143 N.C. App. at 63, 546 S.E.2d at 139.

### I.

[1] First, defendant argues that the Commission erred by awarding total disability benefits to plaintiff pursuant to N.C.G.S. § 97-29 and that this Court should conclude that plaintiff is entitled to partial disability benefits pursuant to either N.C.G.S. §§ 97-30 or 97-31. We disagree.

When parties execute a Form 21 agreement which stipulates that the disability lasts for the necessary amount of weeks, and the agree-

**FOSTER v. U.S. AIRWAYS, INC.**

[149 N.C. App. 913 (2002)]

ment is approved by the Commission, the employee receives the benefit of the presumption of an ongoing disability. *See Russos v. Wheaton Indus.*, 145 N.C. App. 164, 167, 551 S.E.2d 456, 458 (2001), *review denied by* 355 N.C. 214, 560 S.E.2d 135 (2002). Moreover, when a Form 26 supplemental agreement is executed, the nature of the disability is determined according to what is specified in the Form 26 supplemental agreement. *See Saunders v. Edenton Ob/Gyn Ctr.*, 352 N.C. 136, 140, 530 S.E.2d 62, 64 (2000). However, the employer may rebut this presumption by showing that suitable jobs are available, taking into consideration the employee's physical and vocational limitations, and taking into consideration whether the employee is capable of obtaining a suitable job. *Saums v. Raleigh Community Hospital*, 346 N.C. 760, 763-64, 487 S.E.2d 746, 750 (1997). Evidence that an employee unjustifiably refused suitable employment is evidence sufficient to rebut the presumption of ongoing disability. *Allen*, 143 N.C. App. at 63, 546 S.E.2d at 139.

**a.**

Defendant argues that the Commission's findings demonstrate that plaintiff has partial earning capacity. Specifically, defendant points our attention to a portion of the Full Commission's opinion and award that states, "Defendant is entitled to a credit for any wages earned during the period compensation of $435.90 per week [as] paid by Defendant." Defendant argues that the above mentioned award is evidence that plaintiff was not totally disabled and was in fact capable of earning some income. We disagree.

The record on direct appeal from a decision of an administrative agency must contain so much of the evidence as necessary for an understanding of the assigned errors. *See* N.C. R. App. P. 18(c)(6). The record in the instant case does not reflect any employment and the Commission made no findings that plaintiff had resumed any employment during her period of disability. Therefore, this Court is unable to address whether this employment, if any, was suitable employment.

**b.**

Defendant argues that the Commission's findings do not support its conclusion that plaintiff was totally disabled. Specifically, defendant argues that the Commission erred in reinstating plaintiff's award of temporary disability after plaintiff reached MMI. Defendant argues that upon reaching MMI, plaintiff's healing period ceased, and the

**FOSTER v. U.S. AIRWAYS, INC.**

[149 N.C. App. 913 (2002)]

temporary nature of plaintiff's disability ceased, triggering her right to permanent disability benefits. We disagree.

In *Russos v. Wheaton Indus.*, 145 N.C. App. 164, 551 S.E.2d 456 (2001), this Court concluded that it was not error for the Commission to award temporary total disability benefits after it was found that the employee had reached MMI. The *Russos* Court stated that once a Form 21 agreement had been entered into by the parties and approved by the Commission, a presumption of ongoing disability attached in favor of the employee. *Russos*, 145 N.C. App. at 167, 551 S.E.2d at 458. Quoting from *Brown v. S & N Communications, Inc.*, the *Russos* Court stated:

> A finding of maximum medical improvement is not the equivalent of a finding that the employee is able to earn the same wage earned prior to injury and does not satisfy the defendant's burden. "The maximum medical improvement finding is solely the prerequisite to determination of the amount of any permanent disability for the purposes of G.S. 97-31."

*Russos*, 145 N.C. App. at 167, 551 S.E.2d at 459 (quoting *Brown v. S & N Communications, Inc.*, 124 N.C. App. 320, 330, 477 S.E.2d 197, 203 (1996)). "After a finding of maximum medical improvement, the burden remains with the employer to produce sufficient evidence to rebut the continuing presumption of disability; the burden does not shift to the employee." *Brown*, 124 N.C. App. at 331, 477 S.E.2d at 203.

Defendant relies on *Demery v. Converse, Inc.*, 138 N.C. App. 243, 530 S.E.2d 871, *review withdrawn by* 353 N.C. 261, 546 S.E.2d 88 (2000) and *Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 472 S.E.2d 382 (1996), for the proposition that reaching MMI signifies the end of the temporary nature of a disability. However, we note that the Supreme Court of North Carolina has concluded otherwise several times, as relates to this issue. Specifically, in *Saums v. Raleigh Community Hospital*, 346 N.C. 760, 487 S.E.2d 746 (1997), our Supreme Court reversed the decision of this Court and affirmed the Commission's award of temporary total disability benefits entered after the employee had reached MMI. In addition, in *Saunders v. Edenton Ob/Gyn Ctr.*, 352 N.C. 136, 530 S.E.2d 62 (2000), our Supreme Court concluded that a presumption of ongoing disability (created via Form 26) continued, despite the fact that the claimant had reached MMI.

In the instant case, a Form 21 was entered into by the parties and approved by the Commission. In addition a Form 26 was completed and approved by the Commission, which stipulated that plaintiff was to receive temporary total disability benefits. Although there has been a finding of MMI in the instant case, defendant has not met its burden of proving that plaintiff has regained wage earning capacity. Therefore, we overrule the correlating assignment of error.

## II.

[2] Second, defendant argues that the Commission erred when it determined that the 14 November 1995 administrative decision and order was improvidently entered. Defendant argues that the doctrine of *res judicata* barred relitigation of the issues resolved by the 14 November 1995 administrative decision and order. Even if the doctrine of *res judicata* did not bar reconsideration of the 14 November 1995 administrative decision and order, defendant argues that plaintiff abandoned issues addressed in the order as a ground for appeal. Defendant argues that the Commission therefore erred when it exercised its inherent judicial power and determined that the 14 November 1995 administrative decision and order was improvidently entered. We disagree.

Workers' Comp. R. of N.C. Indus. Comm'n 703, 2000 Ann. R. (N.C.) 437-38, in pertinent part provides:

1. Orders, Decisions, and Awards made in a summary manner, without detailed findings of fact, including Decisions on applications to approve agreements to pay compensation and medical bills, applications to approve the termination or suspension of compensation, applications for change in treatment or providers of medical compensation, applications to change the interval of payments, and applications for lump sum payments of compensation may be reviewed by filing a Motion for Reconsideration with the Industrial Commission and addressed to the Administrative Officer who made the Decision or may be appealed by requesting a hearing within 15 days of receipt of the Decision or receipt of the ruling on a Motion to Reconsider. *These issues may also be raised and determined at a subsequent hearing.*

(emphasis added).

This rule on its face clearly states that decisions on applications to approve the termination or suspension of compensation may be raised and determined at a subsequent hearing. Moreover, in the

**FOSTER v. U.S. AIRWAYS, INC.**

[149 N.C. App. 913 (2002)]

instant case, the parties stipulated that the propriety of the 14 November 1995 order was one issue for the Full Commission to address.

We conclude that the doctrine of *res judicata* did not prohibit the Full Commission from reviewing the propriety of the 14 November 1995 administrative decision and order. Therefore, the correlating assignment of error is overruled.

## III.

[3] Third, defendant argues that the Commission erred in concluding that no suitable jobs were available for plaintiff, and concluding that plaintiff's educational pursuits were a proper method of vocational rehabilitation. We disagree.

### a.

Defendant argues that the Commission erred because its sole consideration in determining the suitability of the vocational rehabilitation job leads and the reservationist job was the disparity in plaintiff's pre-injury wages and her post-injury wages. We disagree.

The disparity between pre-injury and post-injury wages is one factor which may be considered in determining the suitability of post-injury employment. *See Dixon v. City of Durham*, 128 N.C. App. 501, 504, 495 S.E.2d 380, 383 (1998).

The Commission found that the reservationist position was never officially offered to plaintiff. Notwithstanding, the Commission found that (even if plaintiff had been officially offered the reservationist position) plaintiff would start at the bottom of this wage scale and would not have a starting wage similar to the wages she received as a flight attendant. In addition, the Commission found that other job leads were unsuitable; and defendant has offered this Court no evidence that additional opportunities were offered to plaintiff; or that these leads were suitable.

We conclude that it was proper for the Commission to consider pre-injury and post-injury wages to determine whether post-injury employment leads were suitable employment. Therefore, we overrule the correlating assignment of error.

### b.

Defendant argues that the Commission erred in its application of the ruling in *Dixon* to the facts in this case. We disagree.

In *Dixon*, the claimant (plaintiff) was serving as a police officer for the City of Durham when she suffered a serious cut to her wrist in the course of performing her duties. Due to the injury, claimant was unable to return to her job as a Police Officer II. Defendant City of Durham was unable to place claimant in a position within her physical limitations, but subsequently offered claimant a position as a meter reader trainee at the same salary as her former position. The meter reader trainee position, however, did not offer the same opportunity for income advancement as her former position. Claimant declined the meter reader trainee position. Subsequently this Court concluded that the meter reader trainee position was not suitable employment and that claimant was justified in rejecting the position.

In this case, the Commission concluded:

1. Refusal of the employee to accept any medical, hospital, surgical, or other treatment or rehabilitative procedure when ordered by the Industrial Commission ordinarily shall bar said employee from further compensation until such refusal ceases. N.C. Gen. Stat § 97-25; *Sanhueza v. Liberty Steel Erectors*, 122 N.C.App. 603, 471 S.E.2d 92(1996). However, in this instance the rehabilitation being offered by defendant was not appropriate and the Special Deputy Commissioner should not have ordered the plaintiff to comply with it. Therefore, any failure of the plaintiff to abide by this order did not violate N.C. Gen. Stat. § 97-25 and no sanctions can be based thereon.

The Commission then cited to *Dixon* for the proposition that a claimant did not unjustifiably refuse suitable employment where that claimant was offered the same salary as her pre-injury position salary but without the same or similar opportunity for income advancement.

In both this case and in *Dixon*, an issue was raised concerning the suitability of post-injury employment based on the disparity in pre-injury and post-injury wages. The evidence in the instant case, like the evidence in *Dixon*, reveals that a disparity existed between plaintiff's pre-injury and post-injury salary and opportunity for advancement. We conclude that the Commission did not err in its application of *Dixon* to the facts in this case. Therefore, the correlating assignment of error is overruled.

**c.**

Defendant argues that the Commission erred in approving plaintiff's educational pursuits as a form of vocational rehabilitation pursuant to N.C.G.S. § 97-25. We disagree.

N.C.G.S. § 97-25 (1999), in pertinent part provides:

Medical compensation shall be provided by the employer. . . . In case of a controversy arising between the employer and employee relative to the continuance of medical, surgical, hospital, or other treatment, the Industrial Commission may order such further treatments as may in the discretion of the Commission be necessary.

The Commission may at any time upon the request of an employee order a change of treatment and designate other treatment suggested by the injured employee subject to the approval of the Commission, and in such a case the expense thereof shall be borne by the employer upon the same terms and conditions as hereinbefore provided in this section for medical and surgical treatment and attendance.

Defendant argues that plaintiff's educational pursuits are not reasonably required to effect a cure, give relief, or lessen the period of plaintiff's disability. Therefore, defendant argues that plaintiff's educational pursuits are not a proper form of vocational rehabilitation as referenced pursuant to N.C.G.S. § 97-2(19).

N.C.G.S. § 97-2(19) (1999), provides:

(19) Medical Compensation.—The term "medical compensation" means medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability; and any original artificial members as may reasonably be necessary at the end of the healing period and the replacement of such artificial members when reasonably necessitated by ordinary use or medical circumstances.

In construing N.C.G.S. §§ 97-25 and 97-2(19), it appears that the Commission has discretion in determining whether a rehabilitative service will effect a cure, give relief, or will lessen a claimant's period of disability.

The evidence in this case shows that plaintiff was not qualified to earn the same wages in another field that she received as a flight attendant. The evidence shows that "CRA representatives had stated that it would be impossible for them to place plaintiff in a job that paid the same as her old job and thereafter conducted a job search for inappropriate lower paying jobs." The evidence also shows that the DVR representative stated "that plaintiff did not have the educational background or job skills to transfer into a job that was going to pay her anywhere near the $35,000 per year she had earned at USAir." In addition, the evidence shows that receiving a Social Work degree would serve as the foundation for plaintiff to qualify for a higher wage in another field.

We note on at least one prior occasion this Court has documented the Commission's approval of educational pursuits as being a proper form of vocational rehabilitation. *See Russos,* 145 N.C. App. at 166, 551 S.E.2d at 458 (noting that the Industrial Commission approved a claimant's paralegal training as a reasonable attempt at rehabilitation given the totality of the circumstances surrounding the case).

Considering the circumstances in our case, we conclude the Commission did not err nor abuse its discretion in approving plaintiff's educational pursuits. We overrule the correlating assignment of error.

## IV.

[4] Last, defendant argues that the Commission's findings of fact 2, 10, 11, 12, 13, 15 and 19 are not supported by competent evidence. As defendant has not presented an argument regarding finding of fact 19, we deem this issue to be abandoned pursuant to N.C. R. App. P. 28(b)(5). As to the remainder of defendant's arguments, we disagree.

As previously stated, the Commission's findings of fact are binding on appeal if supported by competent evidence in the record. *Allen,* 143 N.C. App. at 60, 546 S.E.2d at 137; *Adams,* 349 N.C. at 681, 509 S.E.2d at 414.

The Full Commission's findings of fact 2, 10, 11, 12, 13 and 15 read:

2. The plaintiff graduated from high school in 1977, attended Elon College for two years, and after numerous changes in her studies, obtained a certificate in Secretarial Sciences in 1979. The

plaintiff also attended classes at High Point College in the 1980's, although no degree was obtained. She also completed in 1994 a course in computer use at Davidson Community College in order to learn to use a home computer. None of this training nor any of her job experience was immediately transferable into a job paying $35,000.00 per year unless it was a return to her job as a flight attendant.

. . .

10. On April 19, 1995, Ms. Hassell, a vocational case manager with CRA, met with plaintiff to discuss the job search, during which she encouraged plaintiff to research and seek job openings independently. At that meeting, plaintiff expressed an interest in completing her degree in social work, which could lead to a career paying approximately what she had made as a flight attendant. Plaintiff advised Ms. Hassell that she had met with Loyd [sic] Rollins, a counselor with the North Carolina Division of Vocational Rehabilitation (NCDVR) concerning this.

11. Plaintiff met with Mr. Rollins who arranged for a series of vocational tests. After reviewing plaintiff's test results and background Mr. Rollins concluded that plaintiff did not have the educational background or job skills to transfer into a job that was going to pay her anywhere near the $35,000 per year she had earned at USAir. He concluded that the only way for her to obtain such a salary was to return to school and complete her degree; otherwise, she was only qualified for jobs with a salary in the low to mid-teens, around half what she had previously earned. In June of 1995, the plaintiff was approved for a scholarship by the NCDVR to enroll at Mitchell Community College in Statesville in furtherance of her goal of retraining and obtaining a job paying approximately $35,000 per year.

12. The plaintiff inquired of both Ms. Hassell and Andrea Quinn, an adjuster with the servicing agent, as to the possibility and advisability of returning to school to obtain a degree which would qualify her for a job at a salary commensurate with what she was earning at the time of her injury. On June 6, 1995, Ms. Quinn advised that the defendant would not pay for plaintiff to go to school. After plaintiff expressed concerns about continuing a job search while attending classes, the vocational services of CRA were temporarily suspended, and a labor market survey for plaintiff's educational and vocational abilities was performed

(This was four months after CRA had begun its vocational efforts). Plaintiff chose to enroll at Mitchell Community College in Statesville in August 1995 as a full-time student in the Human Service Education field under the auspices of the North Carolina Division of Vocational Rehabilitation (NCDVR). The Full Commission finds this to be a proper and reasonable rehabilitative procedure pursuant to N.C. Gen. Stat § 97-25 and hereby authorizes its use *nunc pro tunc*. Although plaintiff had inquired of Ms. Hassell whether USAir would consider such schooling under the auspices of NCDVR to be proper rehabilitation efforts she got no response concerning this question until she had enrolled in the program and was attending classes.

13. On October 2, 1995, the defendant filed a Form 24 Application to Suspend or Terminate Benefits. Although the Form 24 was not approved, then Special Deputy Commissioner W. Bain Jones, Jr., (now Deputy Commissioner) ordered the plaintiff to comply with the defendant's vocational rehabilitation efforts through CRA and to attempt to locate a (low paying) job within her restrictions. This order was improvidently entered in view of the ongoing rehabilitative re-education started at Mitchell Community College in August 1995 under the auspices of the North Carolina Division of Vocational Rehabilitation. It was improper for the Industrial Commission's Special Deputy to order plaintiff to undertake duplicative vocational rehabilitation that interfered with what the Full Commission has found to be proper rehabilitative procedure. This is especially true when the CRA representatives had stated that it would be impossible for them to place plaintiff in a job that paid the same as her old job and thereafter conducted a job search for inappropriate lower paying jobs.

. . .

15. In July of 1996, the plaintiff was informed that the defendant had a reservationist position available in Winston-Salem which was within her restrictions and paid a wage comparable to her pre-injury wage. The Full Commission finds that this job was not suitable and plaintiff's declining of this job was proper. Although a reservationist job had a wage scale similar to plaintiff's previous job, she would have had to start at the beginning end of that wage scale as contrasted to the high end of the flight attendant wage scale she had attained through her years of serv-

FOSTER v. U.S. AIRWAYS, INC.

[149 N.C. App. 913 (2002)]

ice and she would never obtain wages and benefits in the reservationist job equal to her old job.

As to finding of fact 2, defendant argues that the evidence shows that if plaintiff chose to do so, she could have applied for a reservationist position with a pay scale comparable to her flight attendant position. The evidence, however, does not show that plaintiff was ever offered the reservationist position. Moreover, even if plaintiff had applied for and was offered this position, the evidence shows that plaintiff would have started at the lower end of that pay scale, which was not comparable to the salary she received as a flight attendant. Therefore, the correlating assignment of error is overruled.

As to findings of fact 10, 11, and 12, defendant argues that plaintiff's degree in social work failed to enhance her earning potential. We disagree. The evidence reveals that, with the associate degree in applied science that plaintiff was scheduled to receive in the spring of 1997, she would be unable to assume a position with wages comparable to those she received as a flight attendant. However, plaintiff would be in a position to complete an undergraduate social work degree, and thus, lay a foundation in which her advanced education would qualify her for positions with wages comparable to those she received as a flight attendant. Specifically, the Full Commission found that "[a]ll rehabilitation professionals assigned to plaintiff by defendant expressed the belief that plaintiff would never earn the same wages without retraining. . . ." Therefore, we overrule the correlating assignments of error.

As to finding of fact 13, defendant argues that the Commission's characterization of the 14 November 1995 order, as compelling plaintiff to find low paying jobs, is not supported by evidence in the record. We disagree.

Although the 14 November 1995 order did not state that plaintiff was required to secure a low paying job, the evidence reveals that plaintiff could no longer meet the requirements for a position as a flight attendant. She was unqualified to assume a position in another field with wages comparable to those that she received as a flight attendant. In addition, the evidence reveals that when the rehabilitation specialists were unable to secure job leads for positions with wages comparable to those plaintiff received as a flight attendant, the specialists pursued job leads for positions with lower paying salaries. We conclude that the Commission's characterization of the 14 November 1995 order is supported by competent

evidence in the record. Therefore, the correlating assignment of error is overruled.

As to finding of fact 15, defendant argues that the Commission erred in determining the reservationist position was unsuitable based on the assumption that plaintiff would not obtain wages comparable to her former position. We disagree. As previously stated, there is no evidence in the record that plaintiff was officially offered the position. Moreover, it was proper for the Commission to consider plaintiff's pre-injury and post-injury wages in determining whether the reservationist position was suitable employment. Therefore, we overrule the correlating assignment of error.

### Conclusion

We conclude that the Commission did not err in: 1) awarding total disability benefits to plaintiff pursuant to N.C.G.S. § 97-29, 2) determining that the 14 November 1995 administrative decision and order was improvidently entered, and 3) concluding that no suitable jobs were available for plaintiff and that her educational pursuits were a proper form of vocational rehabilitation. In addition, we conclude that the Commission's findings of fact 2, 10, 11, 12, 13, and 15 are supported by competent evidence in the record. The opinion and award of the Commission is affirmed.

AFFIRMED.

Judges WYNN and McCULLOUGH concur.