***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement, incorporated herein by reference, and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. EBI Companies is the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage was $422.00, which yields a compensation rate of $281.35.
5. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment on 3 May 1999.
6. The issue for determination is whether plaintiff may undergo retraining or schooling at defendants' expense.
7. The parties stipulated the following documentary evidence into the record:
a. Industrial Commission Forms 18, 19, 28(2), 28T, 33, 33R and 60;
b. Opinion and Award of Deputy Commissioner Chrystal Redding Stanback, filed April 29, 2002;
c. Medical Records of The Rehab Center;
d. Records of Dr. Leon Dickerson;
e. Records of Dr. Verne Schmickley;
f. Records of Dr. Brian O'Malley;
g. Records of Dr. Peter Miller;
h. Records of Dr. Karl Schroeder;
i. Motion for Retraining, Response and Order setting the case for hearing; and,
j. NC Vocational Rehabilitation Psychological Evaluation.
 ***********
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission finds as fact the following:
 FINDINGS OF FACT
1. Prior to the compensable injury, plaintiff had undergone six back surgeries.
2. Plaintiff had prior work experience as an armed security officer at a nuclear plant, a tow truck driver, a dump truck driver, and a maintenance and janitorial director.
3. Following the compensable injury, Dr. T. Kern Carlton began treating plaintiff. By July 26, 2000, plaintiff reached maximum medical improvement and was found to retain a five percent (5%) permanent partial impairment to his back as a result of the compensable injury. Plaintiff was also found to have an adjustment disorder with depression secondary to the compensable injury. Dr. Carlton has found that plaintiff will require the use of a cane and medications, likely for the rest of his life.
4. Dr. Carlton released plaintiff to return to light-duty work, which defendants provided until December of 2000, when such work was no longer available.
5. On 17 May 2001, Dr. Karl Schroeder, a board-certified psychiatrist at Grace Hospital in Morganton, evaluated plaintiff for suicidal ideations and depression, recurrent severe, panic disorder, and low back pain. Dr. Schroeder increased plaintiff's Celexa to 40 milligrams. On 19 July, Dr. Schroeder released plaintiff from his care and recommended he continue with Dr. Carlton, as plaintiff advised Dr. Carlton prescribed morphine for management of back pain.
6. After an unsuccessful job search, plaintiff sought the assistance of North Carolina Vocational Rehabilitation on April 19, 2001. Following assessments and evaluations, a plan was developed to assist him to return to gainful employment. In developing the individual plan for employment (hereinafter "IPE"), an evaluator considered medical notes, limitations and capabilities, recommendations of doctors, and interests of the client. As a part of the IPE, plaintiff was evaluated for psychological as well as physical limitations. Plaintiff has chronic pain due to the compensable injury, and he uses a cane to walk. Plaintiff has difficulty in stooping, bending, and standing or sitting for long periods of time.
7. Plaintiff's IPE identified a criminal justice position as a recommended job choice. Pursuant to this plan, specific steps were set forth toward this career path, including obtaining a GED (in June of 2002), follow-up evaluations with Dr. Carlton, and further education, beginning with a criminal justice program at Catawba Valley Community College.
8. Specifically, jobs under the North Carolina Department of Juvenile Justice and Delinquency Prevention are classified as juvenile court counselors. These positions have been evaluated, and written job descriptions exist which address the essential functions of the job. In addition, these jobs are subject to the certification under the Criminal Justice Standards Commission, effective July 1, 2003, and are subject to the physical requirements as set forth under the North Carolina Administrative Code.
9. Plaintiff testified at the hearing before the Deputy Commissioner that he is making good grades and has a 3.33 grade point average, of which he is very proud considering how long he had been out of school. Additionally, plaintiff testified that he has prior experience doing security work that might further help him in obtaining a criminal justice position.
10. Defendants have argued that plaintiff is ill suited for a career in criminal justice because of his depression and panic disorders. However, plaintiff's treating psychiatrist, Dr. Schroeder, was questioned during deposition as to whether he believed a criminal justice position would be an appropriate career for plaintiff. Dr. Schroeder responded: "I think it is perfectly okay for him to pursue this career. I don't see that depression or panic disorder would stop him from being a good employee in a job like that."
11. Based on the evidence of record, the Full Commission, in its discretion, determines that plaintiff would benefit from rehabilitative services necessary to aid him in obtaining work in the criminal justice field.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission reaches the following:
 CONCLUSION OF LAW
1. The North Carolina Court of Appeals has found that the Industrial Commission, in construing N.C. Gen. Stat. §§ 97-2(19) and 97-25, and determining whether a rehabilitative service will effect a cure, give relief, or lessen claimant's disability, has the discretion to approve educational training as a form of vocational rehabilitation. Foster v. U.S. Airways, Inc.,149 N.C. App. 913, 563 S.E.2d 235 (2002). In Foster, the court found that educational training is appropriate when there is evidence that it would be impossible for claimant to be placed in a job that paid the same as his pre-injury wage without further educational training. In the present case, the evidence of record indicates that plaintiff, given his physical limitations, would have difficulty finding employment that would pay him a comparable wage to his pre-injury earnings, and that further education would greatly enhance his chance of earning his pre-injury wage. Moreover, North Carolina Vocational Rehabilitation has identified a specific field of employment suitable to plaintiff's restrictions, of which plaintiff has shown interest and dedication in pursuing. Plaintiff would benefit from vocational rehabilitation compensation for necessary educational training to obtain a criminal justice position, as recommended by North Carolina Vocational Rehabilitation. Id.
 ***********
Based on the foregoing findings of fact and conclusion of law, the Full Commission enters the following:
 AWARD
1. Defendants shall provide vocational rehabilitation compensation to plaintiff for educational training necessary to obtain a criminal justice position, and to restore plaintiff to his pre-injury wage earning capacity.
2. Defendants shall pay the costs.
This 15th day of March 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER