***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Taylor. Based upon review of all the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commissions finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer at the times in question.
3. The employer is self-insured with Key Risk Management Services, Inc., as the administrator.
4. The employee's average weekly wage is $649.26.
5. Employee sustained an injury by accident to his neck/spine on December 24, 1996.
6. The injury arose out of and in the course of employment and is compensable.
7. Various medical records and other documents have been stipulated into evidence as Stipulated Exhibit 1.
8. The issues for determination are
 • Should reschooling for the employee, as recommended by North Carolina Vocational Rehabilitation, be approved?
 • Is plaintiff entitled to ongoing temporary total compensation?
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 58 years old. Plaintiff worked as a long distance truck driver for the defendant-employer until he sustained an admittedly compensable injury by accident on December 24, 1996.
2. As a direct and proximate result of his compensable injury, plaintiff has undergone the following surgeries:
 • May 5, 1997-C5-6 and C6-7 spinal fusion by Dr. Alfred Geissele;
 • October 6, 2000-C4-5 spinal fusion by Dr. Alfred Geissele; and
 • June 27, 2001-repeat C4-5 spinal fusion by Dr. Alfred Geissele.
3. After the first two surgeries, plaintiff returned to truck driving either for defendant-employer or other companies. However, on October 31, 2001, after the third surgery, Dr. Geissele placed plaintiff on permanent restrictions of 15-20 pound lifting, push/pull 35 pounds, and no overhead work.
4. Dr. Geissele later continued these restrictions because plaintiff's head rotation was significantly restricted due to his three fusion surgeries. Dr. Geissele also determined that plaintiff is at high risk of needing further spine surgery should he return to truck driving or be required to exceed his restrictions. On April 25, 2002, Dr. Geissele further restricted plaintiff from operating a commercial truck or vehicle.
5. Due to plaintiff's restrictions assigned by Dr. Geissele, the plaintiff could not return to his pre-injury employment. The defendant offered plaintiff jobs as a truck refueler, a garage assistant, a security guard and working in the wash pit. The plaintiff testified at the hearing before the Deputy Commissioner that the garage assistant job is only a part-time job and/or that it is a "make-work" position. He further testified that the security guard job would require him to stand and walk for long periods of time which he is unable to do because of a prior injury by accident to his knee, occurring while working for defendant. This position would also require plaintiff to watch over the property of others and to defend himself, which he cannot do because of his three prior fusion surgeries. Plaintiff also stated that the job in the wash pit involved too much over the shoulder work while washing trucks.
6. Dr. Geissele opined that the truck refueler job violates the plaintiff's permanent restrictions. Furthermore, plaintiff's prescribed medications caused him to lose concentration and to become dizzy. Dr. Geissele did not approve the jobs of a garage assistant, security guard and wash pit worker.
7. In April 2002, and between February 2003 and August 2003, the defendants hired a private investigator to observe plaintiff.
8. At the hearing before the Deputy Commissioner, John David Ickard, the licensed private investigator hired by defendants, testified that on May 30, 2003, he began to personally observe plaintiff per the defendants' request. Mr. Ickard testified that he personally observed plaintiff engage in activities, including using a bush hog, hooking and unhooking items to a tractor, lifting a small child onto a horse and unloading some "good sized material out of his truck" and onto the ground. Mr. Ickard classified this as "pretty moderate activity." Mr. Ickard went on to testify at the hearing before the Deputy Commissioner that he never observed plaintiff limit his motion in his head, neck or upper body, except when he reviewed the video prior to the hearing and noticed plaintiff using a cane.
9. On cross examination at the hearing before the Deputy Commissioner, however, Mr. Ickard testified that the tractor referred to was a "small Ford tractor" and that when plaintiff was on this tractor he turned his body sideways to the right to look behind him. Plaintiff testified that he has to turn his entire body to the side to look behind him because he cannot turn his head from side to side due to his injury by accident. Moreover, Mr. Ickard testified that when plaintiff dragged rolls out of the truck he only used his right arm and hand, not his left arm or hand. Finally, Mr. Ickard testified that when he observed plaintiff ". . . do something such as lifting a child over something," plaintiff used his right arm exclusively. This is evident in the videotapes.
10. A review of the videotapes of plaintiff by the Full Commission depicts plaintiff turning his body sideways to look behind him as he drives a small tractor and reveals that he consistently favors his left arm. This is also evident as he lifts a child onto a pony using only his right arm. Plaintiff constantly lifts objects using only his right hand and arm and when lifting objects that appear to be heavy, he uses both hands and arms or is assisted by another person.
11. Dr. Geissele reviewed the videotapes and the photographs depicting the plaintiff's physical activity and his range of motion and stated that the surveillance videotapes do not change his opinion that the plaintiff should not drive a commercial truck.
12. After viewing the surveillance videotapes that reflect only a small period of time during the ongoing litigation in this matter, the Full Commission finds plaintiff's testimony, reasoning and explanations credible regarding his movements and activities depicted on the videotapes. After viewing the videotapes and reviewing the complete testimony of both plaintiff and defendants' witnesses, the Full Commission finds plaintiff credible.
13. On July 23, 2003, plaintiff was self-referred to North Carolina Vocational Rehabilitation Services for assistance because he knew he would not be able to return to truck driving. Ms. Shellian Douglas, a caseworker, tested and evaluated plaintiff. In conjunction with his caseworker, plaintiff determined that he should pursue retraining in criminal justice for likely juvenile probation officer employment. A probation officer's job is light sedentary work and within plaintiff's restrictions.
14. Henry Steele is the director of the Hickory region of North Carolina Vocational Rehabilitation Services. His experience of over nineteen and one-half years at Vocational Rehabilitation Services includes counseling 7,000-8,000 clients. Mr. Steele is particularly impressed that plaintiff wants to return to gainful employment even though he is approved for Social Security disability. In Mr. Steele's professional opinion, based upon factors including the lack of comparable income employment without retraining, plaintiff's physical restrictions, inability to return to prior employment, and plaintiff's motivation, retraining is the proper course for plaintiff.
15. Plaintiff has begun full-time retraining at Wilkes Community College where he is maintaining satisfactory progress and grades. Completion of training is expected by December 2006 with an anticipated additional two years thereafter to bring plaintiff's income up to pre-injury level.
16. The totality of the competent evidence in the record establishes that the jobs offered to plaintiff by defendants were not suitable. The Full Commission finds that the plaintiff justifiably refused to perform these jobs.
17. The competent evidence in the record establishes that plaintiff is entitled to continuing indemnity compensation and to continued vocational rehabilitation, including, retraining and/or reschooling.
 ***********
The foregoing stipulations and findings of fact engender the following additional:
 CONCLUSIONS OF LAW
1. Plaintiff justifiably refused work, which was not within his restrictions as prescribed by his treating physician. N.C. Gen. Stat. § 97-32; Foster v. U.S. Airways, Inc., 149 N.C. App. 913,563 S.E.2d 235 (2002).
2. Plaintiff is entitled to continuing temporary total disability payments in the amount of $432.86 per week until further Order of the Commission. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff is entitled to have the defendant pay for medical expenses incurred or to be incurred, including plaintiff's reschooling and/or retraining, and/or continuing vocational rehabilitation as recommended by the North Carolina Vocational Rehabilitation Services, as a result of his compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19), § 97-25.
 ***********
The foregoing stipulations, findings of fact and conclusions of law engender the following:
 AWARD
1. Subject to attorney's fees, defendants shall continue to pay plaintiff temporary total disability compensation at the rate of $432.86 per week, and continuing until further Order of the Commission.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff, including plaintiff's reschooling and/or retraining, and/or continuing vocational rehabilitation as recommended by the North Carolina Vocational Rehabilitation Services as a result of his compensable accident for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability when bills for same have been submitted to and approved by the Industrial Commission.
3. A continuing attorney's fee for plaintiff's counsel of 25% of the above compensation is approved and shall be paid directly by defendants to said attorney.
4. Defendants shall pay the costs.
This the __ day of October 2005.
 S/_________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_________________ DIANNE C. SELLERS COMMISSIONER