* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as: *Page 2 
 STIPULATIONS
1. Plaintiff is Jack Bryson.
2. Defendant-employer is Phil Cline Trucking.
3. The carrier at risk is Key Risk Management Services.
4. On all relevant dates, defendant-employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act.
5. On all relevant dates, an employer-employee relationship existed between plaintiff-employee and defendant-employer.
6. The date of the incident giving rise to this claim is March 12, 1994.
7. On all relevant dates, plaintiff's average weekly wage was $578.19, yielding a compensation rate of $385.47.
8. Defendants are paying indemnity and medical compensation to plaintiff pursuant to final awards of the Industrial Commission dated October 26, 1995, and January 5, 1998.
9. Plaintiff has not returned to work for defendant-employer since March 12, 1994, the date of his injury by accident, and is currently not working.
10. Plaintiff currently receives Social Security Retirement benefits. Plaintiff received Social Security Disability benefits until he qualified by age to convert them to retirement benefits at age sixty-five (65).
11. At the hearing, the parties submitted the following:
 a. A Packet of Plaintiff's Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2); *Page 3 
 b. A Packet of Industrial Commission Documents from Previous Proceedings, which was admitted into the record, and marked as Stipulated Exhibit (3);
 c. The Deposition Transcript of Dr. Daniel Gooding dated 13 July 1999, which was admitted into the record, and marked as Stipulated Exhibit (4);
 d. The Deposition Transcript of Timothy D. Bryson, MA, CRC, ABVE, which was admitted into the record, and marked as Stipulated Exhibit (5);
 e. The Deposition Transcript of Dr. Bruce Darden dated 30 October 1996, which was admitted into the record, and marked as Stipulated Exhibit (6), and;
 f. A 22 September 2004 Surveillance Videotape of Plaintiff and a 5 August 2005 Surveillance Videotape of Plaintiff, which were admitted into the record, and marked as Stipulated Exhibits 7(A) and 7(B).
12. The issues to be determined are as follows:
 a. Whether plaintiff is permanently and totally disabled pursuant to N.C. Gen. Stat. § 97-29;
 b. Whether Special Deputy Commissioner Maddox's administrative decision filed on 17 October 2005 should be overturned;
 c. Whether further vocational rehabilitation activities are appropriate for plaintiff based upon the relevant vocational factors;
 d. Whether the Commission should order VocMed, Inc., be removed from plaintiff's case and prohibited from further activities, and; *Page 4 
 e. Whether defendants have unreasonably defended this claim and used vocational rehabilitation activities inappropriately with the intent of harassing plaintiff and if so, whether plaintiff is entitled to sanctions.
 * * * * * * * * * * * RULING ON MOTION TO SUBMIT ADDITIONAL EVIDENCE
Defendants have moved to submit additional evidence to the record in this matter. The Full Commission, in its discretion, hereby DENIES defendants' motion to submit additional evidence.
 * * * * * * * * * * * PROCEDURAL HISTORY
This is a denied claim that was initially heard by former Deputy Commissioner Roger L. Dillard, Jr. in October 1994. Deputy Commissioner Dillard ruled that plaintiff was an independent contractor at the time of his injury. The Full Commission reversed that ruling in an Opinion and Award filed on October 21, 1995, finding plaintiff's claim to be compensable and remanding it for a determination of the extent of his disability. Defendants' appeal to the Court of Appeals was dismissed, given that the Full Commission's decision was interlocutory.
On remand from the Full Commission, the case was heard by former Deputy Commissioner Douglas E. Berger, who filed an Opinion and Award on March 26, 1997, finding that plaintiff was disabled from the date of his injury through the date of his Opinion and Award. On appeal, the Full Commission affirmed Deputy Commissioner Berger's decision on January 15, 1998. Defendants did not appeal the Full Commission's decision, and began paying plaintiff disability compensation. *Page 5 
On December 28, 1999, Deputy Commissioner George T. Glenn II filed an Opinion and Award ordering defendants to pay for the spinal stimulator surgery recommended by plaintiff's treating physician, and awarding Attorney's fees to plaintiff in the amount of $10,500.00. On appeal, the Full Commission modified Deputy Commissioner Glenn's Opinion and Award with regards to the amount of attorney's fees awarded pursuant to N.C. Gen. Stat. § 97-88.1. Defendants did not appeal the Full Commission's decision, and authorized plaintiff's surgery.
Thereafter, defendants continued paying plaintiff indemnity and medical compensation through the filing of and denial of their initial Form 24 in 2004. On February 10, 2005, defendants filed a Motion to Compel plaintiff's Cooperation with Vocational Rehabilitation. On March 26, 2005, Executive Secretary Tracey H. Weaver ordered plaintiff to comply with vocational rehabilitation, but also ordered VocMed to strictly comply with the Commission's guidelines. Defendants then filed a second Form 24 on July 27, 2005, alleging that plaintiff had violated the May 26, 2005 Order of Executive Secretary Weaver. On October 17, 2005, Special Deputy Commissioner Lacy Maddox denied defendants' Form 24.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was sixty-seven years of age, his date of birth being October 6, 1938. Plaintiff completed the fifth grade and does not have a GED. He can read and understand some newspapers and magazines but his overall reading ability is limited. Plaintiff also has severe difficulties with writing due to his *Page 6 
educational level and physical problems associated with a stroke. He can do simple math involving addition and subtraction.
2. In 1996, plaintiff underwent multiple cognitive and skill level evaluations performed by Mr. Timothy Bryson, who is unrelated. Plaintiff scored below the third grade level in spelling. Plaintiff scored a performance IQ of ninety on a Revised Beta examination, which placed him in the twenty-fifth percentile. There is no evidence to indicate that in the ten years since these tests were administered that plaintiff's academic achievement levels or IQ have improved.
3. Plaintiff's past work experience includes driving trucks, which also included responsibilities of unloading the trailer, maintenance of the truck, and keeping a DOT log. Plaintiff also has past work experience in construction and was a convenience store manager.
4. As of the date of hearing before the Deputy Commissioner, plaintiff had undergone seven surgical procedures to his back. On July 13, 1994, plaintiff underwent a microscopic laminectomy/discectomy at L5-S1. On August 24, 1995, plaintiff underwent a second laminectomy/discectomy at L5-S1 on the left along with a bilateral fusion at L5-S1. On November 7, 1996, plaintiff underwent an L4-S1 fusion with a bone graft due to a non-union and laminectomy on the right. On December 9, 1996, plaintiff underwent a procedure during which right-side hardware was removed and L4-5 nerve roots on the right side were decompressed. On March 13, 2001, plaintiff began a trial period of a spinal cord stimulator. On April 17, 2001, the spinal chord stimulator was permanently implanted. In October 2002, plaintiff underwent a procedure during which the spinal cord stimulator was removed due to an infection. *Page 7 
5. On February 25, 2003, plaintiff underwent surgery for vascular occlusion of his arteries. This surgery and a stroke, which have adversely affected his ability to use his right hand, are unrelated to the compensable injury.
6. At the hearing before the Deputy Commissioner, plaintiff testified that he has experienced continuous pain in his lower back since his injury by accident on March 12, 1994. For his ongoing pain, plaintiff has been treated by Dr. G. Britton Harper, a pain management specialist. Dr. Harper has not set specific work restrictions for plaintiff, but has testified that plaintiff's activity is limited by his pain and that plaintiff would have to select the activities in which he is able to engage.
7. Plaintiff has also experienced leg pain since his injury in 1994. Plaintiff's leg pain is partially related to his back injury and partially related to his occlusive vascular disease. This pain adversely affects plaintiff's ability to walk, climb steps, squat, and stoop.
8. Plaintiff has also been diagnosed as having high blood pressure, for which he takes prescription medications. Plaintiff testified that his blood pressure is adversely affected by his ongoing leg and back pain. Plaintiff has further testified that he has some memory loss and anxiety for which he takes Xanax.
9. On December 8, 2004, Dr. David DuPuy, an orthopedic specialist, examined plaintiff for an independent medical evaluation requested by defendants. From an orthopaedic standpoint, Dr. DuPuy opined that plaintiff would have restrictions of lifting no more than ten pounds, no repetitive bending, stooping or crawling and limited the time plaintiff could be on his feet to fifteen minutes per hour. With these restrictions, Dr. DuPuy further opined that plaintiff was in the sedentary to light duty job category, and could perform sedentary work for no more *Page 8 
than four hours per day. Lastly, Dr. DuPuy opined that given plaintiff's physical restrictions, education, and limited ability to read or write, it was doubtful plaintiff was employable.
10. Dr. Harper has opined that plaintiff is totally disabled and that it is unreasonable for him to participate in job search efforts given his age, limited ability to read, chronic back symptoms, and lack of stamina.
11. Timothy Bryson, a vocational rehabilitation specialist retained by plaintiff, was of the opinion that plaintiff is functionally illiterate, not a candidate for retraining in an academic environment, and not a candidate for employment in the competitive labor market in any occupation.
12. Plaintiff has also retained and been evaluated by Mr. Patrick Clifford, a vocational rehabilitation specialist. Mr. Clifford was of the opinion that plaintiff is unable to return to his previous occupations and does not possess transferable skills to alternative employment within his physical abilities. Mr. Clifford was further of the opinion that vocational rehabilitation efforts are not appropriate for plaintiff.
13. In December 2004, defendants assigned VocMed to plaintiff's claim. Mr. Derek Xanders, a conditional rehabilitation professional, was first assigned to plaintiff. Initially, Mr. Xanders attempted to schedule meetings through plaintiff's counsel. However, when plaintiff did not comply with Mr. Xanders' request to immediately enroll in a GED program and initiate job search actives, he began contacting plaintiff directly. Thereafter, plaintiff and his counsel met with Mr. Xanders of VocMed in Charlotte on June 16, 2005, for a vocational appointment pursuant to the May 26, 2005 Order of Executive Secretary Weaver, which required plaintiff to comply with vocational rehabilitation. At the vocational appointment, Mr. Xanders completed an initial vocational assessment dated June 20, 2005. Based on this initial vocational assessment, *Page 9 
Mr. Xanders prepared a Six Month Individual Vocational Disability Plan for plaintiff, in which it was noted that plaintiff would need to start GED classes, register with the North Carolina Security Commission, and complete job searches within his restriction.
14. At the time of the June 16, 2005 meeting, VocMed was under an order by Executive Secretary Weave to strictly comply with the Industrial Commission Guidelines for Utilization of Rehabilitation Professionals. However, plaintiff contends that VocMed failed to comply with the Commission's guidelines in multiple ways
15. On June 24, 2005, plaintiff's counsel again notified VocMed that its activities were inappropriate and were in violation of the Commission's guidelines. Thereafter, the President of VocMed, Gregory Henderson, requested that he be allowed to proceed with rehabilitation efforts in the place of Mr. Xanders.
16. Upon requesting a hearing, plaintiff had no further contact with VocMed or its employees. However, defendants did request that VocMed prepare a Labor Market Survey, which was done by Mr. Henderson. The survey was dated October 21, 2005, and later supplemented on January 31, 2005, one week prior to the hearing. In the survey, VocMed concludes that plaintiff was capable of obtaining a job that met his assigned physical restrictions in which he could earn wages equal to his hourly rate, but with less overall salary due to the need for reduced hours. The jobs identified by Mr. Henderson were primarily in the nature of optical assemblers and telephone solicitors. However, plaintiff has no experience in optical assembly or telephone solicitation. Mr. Henderson identified additional jobs in his January 2006 supplement, which included working with a taxicab company, driving an escort vehicle, managing a laundry mat, working at a golf course, and as an outside deliverer. Mr. Henderson concluded that all jobs identified were appropriate for plaintiff and would be available in the local labor market. *Page 10 
However, at the hearing before the Deputy Commissioner, Mr. Henderson testified that job search activities for plaintiff in this case should not have been a foregone conclusion, and that VocMed should have recommended vocational testing prior to determining whether plaintiff could be placed in suitable employment.
17. Based upon the credible evidence of record, the Full Commission finds that, on the whole, VocMed's vocational services have been improper. Thus, the Full Commission assigns little weight to VocMed's conclusion that plaintiff is employable.
18. The Full Commission finds that the surveillance tapes submitted by defendants provide little probative evidence. On those occasions, plaintiff was videotaped at his residence engaging in activities in his yard and with a vehicle. The videotapes do not establish duration of any activity for longer than one or two hours at any given time, and depict plaintiff entering his residence on numerous occasions. The Full Commission gives greater weight to the opinions of plaintiff's treating physicians, as well as vocational rehabilitation counselors Timothy Bryson and Patrick Clifford, in finding that plaintiff is not employable.
19. While it is not plaintiff's burden to prove so, plaintiff has produced sufficient credible medical evidence that, given his age, lack of education, and transferable skills, it would be futile to seek employment and further vocational rehabilitation services by VocMed, or any other vocational rehabilitation company, are inappropriate. In any event, VocMed's conduct requires that the company be removed as rehabilitation professionals in this case.
20. Based on the totality of the evidence of record, including the plaintiff's age, lack of education and transferable skills, the Full Commission finds that plaintiff is totally unable to earn wages that he was receiving at the time of injury in the same or any other employment and is, thus, permanently and totally disabled. *Page 11 
21. The Full Commission finds that the defendants' actions in this matter, particularly the unreasonable nature of their vocational rehabilitation efforts, are indicative of stubborn, unfounded litigiousness. Based upon an affidavit submitted to the Commission by the plaintiff's counsel as to her work performed on plaintiff's behalf in connection with this case, the Full Commission finds the sum of $5,500.00 to be a reasonable attorney's fee for plaintiff's counsel.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff is permanently and totally disabled as a result of his March 12, 1994 compensable injury by accident. To receive compensation for a permanent total disability, an employee must show that he is "totally unable to `earn wages which . . . [he] was receiving at the time [of injury] in the same or any other employment.'" Burwell v.Winn-Dixie Raleigh, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994) (quoting Tyndall v. Walter Kidde Co., 102 N.C. App. 726, 730,403 S.E.2d 548, 550, disc. rev. denied, 329 N.C. 505, 407 S.E.2d 553
(1991)); see also, Ruiz v. Belk Masonry Company, Inc., 148 N.C. App., 675,559 S.E.2d 249, disc. rev. denied, 356 N.C. 166, 568 S.E.2d 610 (2002). Accordingly, plaintiff is entitled to permanent and totally disability compensation at the rate of $385.47 per week for the remainder of his lifetime. N.C. Gen. Stat. § 97-29.
2. Plaintiff should not be required to participate in vocational rehabilitation. See Moore v. Davis Auto Service, 118 N.C. App. 624,456 S.E.2d 847 (1995); Foster v. U.S. Airways, Inc., 149 N.C. App. 913,563 S.E.2d 235, disc. rev. denied, 356 N.C. 299, 570 S.E.2d 505 (2002). *Page 12 
3. Plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred as a result of his March 12, 1994 injury by accident. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. Because the defendants' defense of this claim was unreasonable and indicative of stubborn, unfounded litigiousness, defendants are subject to sanctions in the form of attorney's fees to be paid to plaintiff's counsel pursuant to N.C. Gen. Stat. § 97-88.1. Based upon an affidavit submitted to the Commission by the plaintiff's counsel as to her work performed on plaintiff's behalf in connection with this case, the Full Commission finds the sum of $5,500.00 to be a reasonable attorney's fee for plaintiff's counsel.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorneys fees approved herein, defendants shall continue paying plaintiff total disability compensation at the rate of $385.47 per week for the remainder of his lifetime.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as a result of his March 12, 1994 injury by accident.
3. Defendants shall pay to the plaintiff's counsel a reasonable attorney's fee in the lump sum of $5,500.00, which shall not be deducted from the compensation awarded to the plaintiff herein.
4. VocMed is HEREBY ORDERED to be removed from this case.
 5. Defendants shall pay the costs. *Page 13 
This 12th day of January 2007.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_______________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER *Page 1