***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties before the Full Commission. Defendants have not shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are subject to and bound by the North Carolina Workers' Compensation Act, and the Industrial Commission has jurisdiction over this matter. *Page 2 
2. Old Republic Insurance Company was the carrier on the risk on or about February 11, 2009, with Underwriters Safety Claims acting as their third-party administrator.
3. An employment relationship existed between Plaintiff and Defendant-Employer on or about February 11, 2009.
4. Plaintiff alleges that he was injured on February 11, 2009.
5. Plaintiff's average weekly wage was $669.40.
6. Plaintiff was out of work from March 4, 2009 through March 18, 2009, and from May 28, 2009 to the present.
7. Plaintiff has received completely employer-funded short and long-term disability benefits.
 ***********
The following were stipulated into evidence at the hearing before the Deputy Commissioner:
 STIPULATED EXHIBITS
1. A group of documents including the Pretrial Agreement, Industrial Commission Forms, discovery information, a transcript of Plaintiff's March 2, 2009 recorded statement, Defendants' incident report, maps, photographs, and other items, collectively paginated 1-52 and marked as stipulated exhibit 1.
2. A group of Plaintiff's medical records and medical bills collectively paginated 1-337 and marked as stipulated exhibit 2.
 ***********
The following were entered into evidence at the hearing before the Deputy Commissioner:
 EXHIBITS *Page 3 
1. Plaintiff's sketch of the loading dock, ramp, and trailer, without further embellishment, marked as Plaintiff's exhibit 1A.
2. Plaintiff's sketch of the loading dock, ramp, and trailer, with Plaintiff's drawings in red ink made during his testimony, marked as Plaintiff's exhibit 1B.
 ***********
Based upon the preponderance of the evidence of the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is forty-one (41) years old. Plaintiff is a high school graduate and served two years in the military as a weapons systems specialist. Following his military service, Plaintiff worked on the ground crew for private aircraft. Plaintiff began working at Defendant-Employer in 2006, and had the job title of "Wirer II." Plaintiff testified before the Deputy Commissioner that he mostly built "control panels" in this position and that it required frequent heavy lifting.
2. On February 11, 2009, while working for Defendant-Employer, Plaintiff was called from his normal job to help other co-workers push a large, wheeled "enclosure" from the back of a tractor-trailer up a ramp onto a loading dock. On February 11, 2009, Plaintiff and several co-workers pushed the enclosure, quickly trying to get the item up to a speed sufficient to make it onto the ramp and up onto the loading dock. However, when the enclosure's wheels made contact with front edge of the ramp, the enclosure unexpectedly stopped dead, causing it to deliver a blow to Plaintiff. Upon the impact, Plaintiff felt a sharp onset of pain in his left shoulder. The item was eventually dragged up the ramp and out of the trailer using a forklift. *Page 4 
3. Plaintiff returned to work at his regular job immediately after the incident but was soon called away to pick up his daughter, who was sick at school. Plaintiff remained at home the rest of that week and through the weekend to tend to his sick daughter, returning to work the following Monday.
4. Defendant-Employer's "Supervisor's Accident/Incident Investigation Report" reflects that Plaintiff informed Defendant-Employer about the incident upon his return on February 16, 2009. Plaintiff was sent to Concentra for medical treatment, where he was initially seen by Fabienne Ransom, D.O. on February 16, 2009. The medical record reflects the mechanism of injury and explained that Plaintiff's "pain is located on the left neck and shoulder." The medical record further reflects that Plaintiff was diagnosed with the following strains: cervical; trapezius; shoulder; and rotator cuff.
5. Defendants denied the compensability of Plaintiff's claim using a Form 61 dated March 10, 2009, citing that an investigation produced "insufficient evidence that the claimant sustained an injury by accident arising out of and in the course of employment."
6. Plaintiff's symptoms did not improve with treatment from Concentra so on his own he saw his general practice family doctor, who referred Plaintiff to Gill Orthopaedic Clinic. Dr. Marcus P. Cook at Gill Orthopaedic saw Plaintiff on June 8, 2009, and diagnosed him with "Scapulothoracic dykinesia."
7. After being evaluated at Gill Orthopaedics, Plaintiff was sent to Dr. Anthony Kwon, with Total Spine Specialists, for a neck evaluation. Plaintiff was diagnosed with left C5-6 paracentral disc protrusion. Dr. Kwon treated Plaintiff conservatively for two (2) visits and did not believe that surgery was needed.
8. On September 14, 2009, Plaintiff presented to Dr. Alfred Rhyne, an orthopedic spine surgeon with OrthoCarolina. The medical record reflects that Plaintiff "has undergone an *Page 5 
MRI of his cervical spine, conclusive for left C5-6 paracentral disk herniation indenting the ventral cord. At C4-5 there is also lordosis with some cord abutment as well." Plaintiff was diagnosed with a C5-6 symptomatic HNP to the left and mild degenerative changes at C4-5.
9. On September 29, 2009, Plaintiff underwent a C4-5 and C5-6 anterior cervical decompression and fusion with allograph and plate surgery performed by Dr. Rhyne. Since the surgery, Plaintiff testified that he has retained significant pain, and requires Vicodin and Flexeril on a daily basis.
10. On December 24, 2009, Plaintiff presented to Dr. Rhyne following an MRI scan of his cervical spine. The medical record reflects that Plaintiff has a "restricted range of motion in the cervical spine" and suggested the following return to work restrictions: no lifting more than 25 pounds and no excessive overhead work.
11. Plaintiff testified that he attempted to return to work for Defendant-Employer under Dr. Rhyne's restrictions, but was terminated. Plaintiff testified that he was terminated by Defendant-Employer on or about December 31, 2009.
12. Dr. Rhyne issued a "Work Status" form regarding Plaintiff on May 7, 2010. This form restricted Plaintiff from work involving "lifting greater than 30 pounds" and "prolonged reaching overhead or extreme positions of the neck." Plaintiff testified that his job with Defendant-Employer did require frequent heavy lifting. Plaintiff further testified that under Dr. Rhyne's restrictions, he would have been unable to perform any of the work that he has performed in his lifetime, as his work has "always been manual, very physical."
13. Since December 31, 2009, Plaintiff has not looked for a job, but instead has begun a computer network administration curriculum using Veterans Administration benefits. As of the date of the hearing before the Deputy Commissioner, notwithstanding regularly taking medication *Page 6 
for pain, Plaintiff had finished the first term of his studies with a perfect grade point average. Given his vocational history and physical limitations, Plaintiff's educational pursuits are vocationally reasonable.
14. Dr. Anthony Kwan testified at his deposition regarding causation and stated that "when you talk about injuries it's more high energy; car accidents, dive into a swimming pool. I see a lot of spine trauma at the hospital and typically that's what you see, not so much as being jarred."
15. Dr. Alfred Rhyne testified at his deposition that the February 11, 2009 workplace incident was "a reasonable explanation as to where it came from." Dr. Rhyne further testified that the incident aggravated Plaintiff's preexisting neck condition.
16. Based on the preponderance of the evidence of the record, the Full Commission finds on February 11, 2009, Plaintiff suffered a compensable specific traumatic incident to his neck that arose out of and in the course of his employment with Defendant-Employer during a judiciably cognizable time period when a large, heavy item Plaintiff was helping to push stopped unexpectedly, jarring Plaintiff.
17. Based on the preponderance of the evidence of the record, and the stipulations of the parties, the Full Commission finds that Plaintiff was out of work for the following identified periods of time and paid pursuant to a completely employer-funded short and long term disability benefits plan. The periods of time that Plaintiff was out of work have been identified by the parties as the following: (a) March 4, 2009 through March 18, 2009; and (b) May 28, 2009 through December 31, 2009.
18. Based on the preponderance of the evidence of the record, the Full Commission finds the credible medical and vocational evidence of record shows that, as a result of Plaintiff's February 11, 2009 injury, taking into account Plaintiff's physical and vocational limitations, *Page 7 
Plaintiff has been totally disabled and unable to earn any wages in any employment from December 31, 2009 and continuing.
19. The Full Commission finds that given Plaintiff's problems finding suitable employment, physical limitations, and educational potential, Plaintiff would benefit vocationally from further education.
20. The Full Commission finds that the evidence establishes that the medical treatment that Plaintiff has received thus far as a result of the February 11, 2009 incident has been reasonable and medically necessary and has been reasonably calculated to effect a cure and give relief from the February 11, 2009 incident.
21. Due to the circumstances surrounding Plaintiff's return to work with restrictions, and his subsequent termination while under restrictions, the Full Commission finds that it has not been established that Plaintiff's termination was for a reason unrelated to his compensable injury, for which a non-injured employee would have been terminated.
22. The Full Commission finds that on February 11, 2009, Plaintiff's average weekly wage was $669.40, which yields a weekly compensation rate of $446.29.
 ***********
Based upon the foregoing Stipulations, and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. In order to establish a compensable injury to the back or neck, Plaintiff must prove that the disabling injury arose out of and in the course of the employment and was the direct result of either an injury by accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6); Richards v. Town ofValdese, 92 N.C. App. 222, 224, 374 S.E.2d 116, 118 (1988), *Page 8 disc. review denied, 324 N.C. 337, 378 S.E.2d 799 (1989). Under the specific traumatic incident theory, Plaintiff is not required to prove that the injury arose from an unusual occurrence or departure from ordinary duties. Fish v. Steelcase, Inc.,116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994), cert.denied, 339 N.C. 737, 454 S.E.2d 650 (1995).
2. Furthermore, our courts have held that an injury is compensable if it is caused by an accident that arises out of employment, materially accelerates or aggravates a pre-existing condition, and proximately contributes to disability. N.C. Gen. Stat. § 97-2(6); Brown v. Family Dollar Distrib.Ctr., 129 N.C. App. 361, 364, 499 S.E.2d 197, 199 (1998).
3. On February 11, 2009, Plaintiff sustained a compensable injury to his neck as a result of a specific traumatic incident of the work assigned that arose out of and in the course of his employment with Defendant-Employer during a judiciably cognizable time period when a large, heavy item Plaintiff was helping to push stopped unexpectedly, jarring Plaintiff. N.C. Gen. Stat. § 97-2(6);Fish v. Steelcase, Inc.,116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994), cert.denied, 339 N.C. 737, 454 S.E.2d 650 (1995). This compensable injury caused Plaintiff's neck condition or materially accelerated or aggravated a pre-existing condition. N.C. Gen. Stat. § 97-2(6); Brown v. Family Dollar Distrib.Ctr., 129 N.C. App. 361, 364, 499 S.E.2d 197, 199 (1998).
4. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, Plaintiff is entitled to have Defendants provide all medical treatment for Plaintiff's cervical condition, incurred or to be incurred, necessitated by the February 11, 2009 compensable accident when bills for the same have been approved pursuant to Industrial Commission Procedures. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1. *Page 9 
5. The North Carolina Workers' Compensation Act gives the Industrial Commission the power to "order such further [medical] treatments as may in the discretion of the Commission be necessary," with the cost to be borne by defendant. Furthermore, the Industrial Commission "may at any time . . . order a change in treatment and designate other treatment suggested by the injured employee. . . ." N.C. Gen. Stat. § 97-25. In Kanipe v. Lane Upholstery,141 N.C. App. 620 (2000), the North Carolina Court of Appeals explains that "[a]pproval of an employee-selected physician is left to the sound discretion of the Commission." Id. at 626. Given the circumstances of this case, it is best that Dr. Rhyne direct Plaintiff's medical treatment going forward. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1.
6. The North Carolina Court of Appeals has found that the Industrial Commission, in construing N.C. Gen. Stat. §§ 97-2(19) and 97-25, and determining whether a rehabilitative service will effect a cure, give relief, or lessen claimant's disability, has the discretion to approve educational training as a form of vocational rehabilitation.Foster v. U.S. Airways, Inc.,149 N.C. App. 913, 563 S.E.2d 235 (2002). Given the circumstances of the present case, the educational curriculum being studied by Plaintiff is an appropriate course of vocational rehabilitation. N.C. Gen. Stat. §§ 97-2(19); 97-25.
7. As a result of his compensable injury on February 11, 2009, Plaintiff is entitled to receive temporary total disability benefits. N.C. Gen. Stat. § 97-29. This period specifically includes the periods of time for which Plaintiff was out of work, (a) March 4, 2009 through March 18, 2009; and (b) May 28, 2009 through December 31, 2009, and receiving disability plan benefits that were completely funded by Defendant-Employer. N.C. Gen. Stat. § 97-29.
8. Payments made by the employer to the injured employee during the period of his disability, or to his dependents, which by the terms of this Article were not due and payable when *Page 10 
made, may, subject to the approval of the Commission be deducted from the amount to be paid as compensation. N.C. Gen. Stat. § 97-42.
9. The North Carolina Supreme Court has held that:
 [T]he ordinary meaning of the language of N.C.G.S. § 97-42 allows an employer, subject to Commission approval, to receive a full dollar-for-dollar credit for all such payments; this interpretation is not inconsistent with the overall intent of the statute to provide compensation to employees for work-related injuries.
Evans v. AT T Technologies, Inc.,332 N.C. 78, 86-87, 418 S.E.2d 503, 509 (1992). Defendants should be entitled to receive a credit for all short and long-term disability payments made to Plaintiff for the periods of (a) March 4, 2009 through March 18, 2009; and (b) May 28, 2009 through December 31, 2009. N.C. Gen. Stat. § 97-42. See Strickland v. Martin MariettaMaterials, 193 N.C. App. 718, 725, 668 S.E.2d 633, 637 (2008).
10. In order to meet the burden of proving continuing disability, Plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by Plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Russell v.Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). In the present case, Plaintiff has presented sufficient medical evidence that, *Page 11 
taking into account Plaintiff's physical and vocational limitations, he is incapable of work in any competitive employment.
11. Given the credible medical and vocational evidence of record, as a result of Plaintiff's compensable injury of February 11, 2009, Plaintiff was temporarily totally disabled and is entitled to temporary total disability compensation at the rate of $446.29 per week for the period from December 31, 2009 and continuing until Plaintiff returns to work or further Order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod.Distribution, 108 N.C. App. 762 (1993).
12. Due to the circumstances surrounding Plaintiff's return to work with restrictions, and his subsequent termination while under restrictions, it has not been established that Plaintiff's termination was for a reason unrelated to his compensable injury, for which a non-injured employee would have been terminated.Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228 (1996).
13. Plaintiff's average weekly wage was $669.40, which yields a weekly compensation rate of $446.29. N.C. Gen. Stat. § 97-2(5).
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Given the credible medical and vocational evidence of record, and Plaintiff's compensable injury of February 11, 2009, Defendants shall pay Plaintiff temporary total disability compensation at a rate of $446.29 per week for March 4, 2009 through March 28, 2009, and May 28, 2009 through December 31, 2009. Defendants shall be granted a credit against temporary *Page 12 
total disability benefits owing for said periods for payments made pursuant to a completely employer-funded short and long term disability benefits plan, and Plaintiff shall not be granted a 25% credit to allow for an award of attorney's fee.
2. Given the credible medical and vocational evidence of record, and Plaintiff's compensable injury of February 11, 2009, Defendants shall pay Plaintiff, subject to the attorney's fee approved below and the credits owed Defendants for the wages and disability plan benefits paid, temporary total disability compensation at a rate of $446.29 per week from December 31, 2009 and continuing until Plaintiff returns to work or further Order of the Commission. To the extent that amounts have accrued, they shall be paid to Plaintiff in a lump sum.
3. Defendants shall pay all medical expenses incurred or to be incurred as a result of the February 11, 2009 compensable accident when bills for the same have been approved pursuant to Industrial Commission procedures, subject to the provisions of N.C. Gen. Stat. § 97-25.1. This medical treatment shall include, but is not limited to, past and future treatment for Plaintiff's cervical condition.
4. A reasonable attorney fee of twenty-five percent of the compensation due Plaintiff under paragraph 2 of this Award is approved for Plaintiff's counsel and shall be paid as follows: Twenty-five percent of any lump sum due Plaintiff shall be deducted and paid directly to Plaintiff's counsel. Thereafter, Plaintiff's attorney shall receive every fourth compensation check due Plaintiff.
5. Defendants shall pay the costs.
This the ___ day of July 2011. *Page 13 
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/________________ LINDA CHEATHAM COMMISSIONER
 S/_____________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1