WYNN v. UNITED HEALTH SERVS./TWO RIVERS HEALTH—TRENT CAMPUS

[214 N.C. App. 69 (2011)]

TAMIDA WYNN, EMPLOYEE, Plaintiff v. UNITED HEALTH SERVICES/TWO RIVERS
HEALTH—TRENT CAMPUS, EMPLOYER and THE PHOENIX INSURANCE
COMPANY, CARRIER, Defendants

No. COA10-991

(Filed 2 August 2011)

## 1. Workers' Compensation—refusal to accept suitable employment—pre-maximum medical improvement

The Industrial Commission did not err by not terminating plaintiff's workers' compensation insurance where defendants alleged that she had unjustifiably refused to accept suitable employment. Defendant contended that there should be a different, more lenient standard for determining whether plaintiff refused suitable employment where plaintiff had not reached maximum medical improvement. This approach does not accurately reflect existing North Carolina law.

## 2. Workers' Compensation—reasonable search for employment—continuing to seek better position after hiring

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff engaged in a reasonable search for employment. Although defendants argued from cross-examination testimony that plaintiff did not do so, that testimony could plausibly be construed to mean that plaintiff did not continue to seek an even better position after leaving defendant and obtaining another job.

## 3. Workers' Compensation—testimony of rehabilitation specialist—not relied upon by Commission

The Industrial Commission did not err in a workers' compensation case by not relying on testimony from defendants' rehabilitation specialist that plaintiff could have obtained higher post-injury earnings. Fact finding is the Commission's function, and there was ample evidentiary support for not crediting the testimony.

Appeal by defendants from an Opinion and Award entered 7 April 2010 by the North Carolina Industrial Commission. Heard in the Court of Appeals 26 January 2011.

*Scudder & Hedrick, PLLC, by Samuel A. Scudder, for Plaintiff-appellee.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Dalton B. Green, for Defendant-appellants.*

ERVIN, Judge.

Defendants Two Rivers Healthcare and The Phoenix Insurance Company appeal from an order entered by the Industrial Commission awarding Plaintiff Tamida Wynn medical and disability benefits. On appeal, Defendants argue that the Commission utilized an incorrect legal standard in evaluating the suitability of a job offered to the claimant and failed to properly evaluate the evidence relating to Plaintiff's disability. After careful consideration of Defendants' challenges to the Commission's order in light of the record and the applicable law, we conclude that Defendants' arguments lack merit and that the Commission's order should be affirmed.

## I. Factual Background

### A. Substantive Facts

Plaintiff was born in 1975 and resides in New Bern. Plaintiff began working as a certified nursing assistant (CNA) for Defendant Two Rivers on 27 June 2006.

On 1 August 2008, Plaintiff suffered a compensable injury to her left knee. At the time of her injury, Plaintiff earned $10.50 per hour. Plaintiff had seven children, whose ages at the time of her injury ranged from fourteen to just over one. In order to avoid incurring child care expenses, Plaintiff had been working for Defendant Two Rivers from 3:00 p.m. until 11:00 p.m. on Mondays and Fridays and from 7:00 a.m. to 3:00 p.m. on Saturdays and Sundays, a schedule that allowed Plaintiff's older children to watch the younger children while Plaintiff was at work.

In the aftermath of her injury, Plaintiff was treated by Dr. Mark Wertman, an orthopedist, who diagnosed her as having sustained a traumatic ACL sprain with intrasubstance edema and Type 2 signal in the meniscus of her knee. In October 2008, Dr. Wertman allowed Plaintiff to return to work subject to the restriction that she not engage in any kneeling, squatting, or lifting of objects weighing over 40 pounds.

After Dr. Wertman imposed these work restrictions, Defendant Two Rivers offered Plaintiff a job which Defendant classified as a

"light duty CNA" position. The duties performed by occupants of the light duty CNA position included folding laundry, rolling silverware inside napkins, pushing meal carts, sweeping floors, taking out the trash, and providing grooming services for patients. The light duty CNA position paid only $6.50 per hour, an amount which was thirty-nine percent (39%) less than Plaintiff's normal salary, and was not a job that Defendant Two Rivers made available to applicants drawn from the general public. Instead, the light duty CNA job was a temporary position that offered no prospects for advancement and was reserved for employees who had suffered a compensable injury, were under light duty restrictions, and had not yet reached maximum medical improvement (MMI). The light duty CNA position was only available on the 7:00 a.m. to 3:00 p.m. shift, a schedule which was incompatible with Plaintiff's child care arrangements.

Plaintiff worked as a light duty CNA on Saturday, 8 November and Sunday, 9 November 2008. As she left work on 9 November 2008, Plaintiff wrote a note to her supervisor explaining that she could not work the Tuesday and Thursday day shifts during the upcoming week because she had been unable to find child care. As a result, Plaintiff did not report for work as scheduled on Tuesday, 11 November or Thursday, 13 November 2008. When Plaintiff returned to work on Saturday, 15 November 2008, her supervisor informed Plaintiff that, if she could not work the day shift schedule, she no longer had employment.

After her termination, Plaintiff immediately began looking for other employment that she could perform consistently with the restrictions imposed by Dr. Wertman. Within two weeks, Plaintiff obtained a data entry position with Jackson Hewitt Tax Service and began working for Jackson Hewitt on 27 November 2008. The data entry position at Jackson Hewitt paid $8.50 per hour. As of the date of the hearing held before the deputy commissioner on 18 March 2009, Plaintiff continued to occupy this data entry position, working about 16 to 25 hours per week under a schedule that accommodated her child care needs. At that time, Plaintiff was still under the care of Dr. Wertman, had not reached MMI, and was still subject to the work restrictions that Dr. Wertman had imposed in October 2008.

After terminating Plaintiff's employment, Defendant Two Rivers drafted a letter to Plaintiff on 17 November 2008 offering her the light duty CNA job; directing her to report for work on the day shift on Wednesday, 26 November 2008; and stating that, if Plaintiff did not appear for work at the specified time, Defendant Two Rivers would assume that she had resigned. Although it had Plaintiff's correct mailing

WYNN v. UNITED HEALTH SERVS./TWO RIVERS HEALTH—TRENT CAMPUS

[214 N.C. App. 69 (2011)]

address, Defendant Two Rivers mailed the 17 November 2008 letter to an outdated address. After the 17 November 2008 letter was returned as undeliverable, it was re-sent. Plaintiff finally received the 17 November 2008 letter on 9 December 2008. By that time, Plaintiff had obtained her part-time position with Jackson Hewitt.

### B. Procedural History

The parties stipulated that Plaintiff suffered a compensable injury to her left knee on 1 August 2008; that Defendants acknowledged the compensability of Plaintiff's injury by filing an Industrial Commission Form 60 on 28 August 2008; and that Defendants paid workers' compensation benefits to Plaintiff from 2 August 2008 through 8 November 2008. After Plaintiff returned to work for two days in November 2008, Defendants sought to terminate these benefit payments by filing an Industrial Commission Form 28T on 12 November 2008. On 2 December 2008, Plaintiff filed an Industrial Commission Form 33 requesting a hearing with respect to the disability payment issue. In their response to Plaintiff's filing, Defendants asserted that Plaintiff was not entitled to disability benefits because she had "constructively refused suitable employment."

A hearing concerning the disability benefit issue was conducted before Industrial Commission Deputy Commissioner Robert J. Harris on 18 March 2009. On 16 September 2009, Deputy Commissioner Harris entered an order in which he concluded that Plaintiff was entitled to receive disability and medical payment benefits. Defendants appealed Deputy Commissioner Harris' order to the Commission. On 7 April 2010, the Commission, by means of an order issued by Commissioner Christopher Scott with the concurrence of Commissioner Laura K. Mavretic and over a dissent by Commissioner Dianne C. Sellers,[1] affirmed Deputy Commissioner Harris' decision subject to "minor modifications." Defendants noted an appeal to this Court from the Commission's decision.

### II. Legal Analysis

### A. Standard of Review

"The standard of review in workers' compensation cases has been firmly established by the General Assembly and by numerous decisions of this Court. . . . Under the Workers' Compensation Act, '[t]he Commission is the sole judge of the credibility of the witnesses

---

1. In her concurrence, Commissioner Sellers urged adoption of the legal theory upon which Defendants have relied before this Court.

and the weight to be given their testimony.' Therefore, on appeal from an award of the Industrial Commission, review is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law. This 'court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (citing *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 115, 530 S.E.2d 549, 552 (2000), and *Adams v. AVX Corp.*, 349 N.C. 676, 681-82, 509 S.E.2d 411, 414 (1998), and quoting *Anderson v. Construction Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965)). "[F]indings of fact which are left unchallenged by the parties on appeal are 'presumed to be supported by competent evidence' and are, thus 'conclusively established on appeal.' " *Chaisson v. Simpson*, 195 N.C. App. 463, 470, 673 S.E.2d 149, 156 (2009) (quoting *Johnson v. Herbie's Place*, 157 N.C. App. 168, 180, 579 S.E.2d 110, 118, *disc. review denied*, 357 N.C. 460, 585 S.E.2d 760 (2003)). The "Commission's conclusions of law are[, however,] reviewed *de novo*." *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004) (citation omitted). As a result, "[w]hen the Commission acts under a misapprehension of the law, the award must be set aside and the case remanded for a new determination using the correct legal standard." *Ballinger v. ITT Grinnell Industrial Piping*, 320 N.C. 155, 158, 357 S.E.2d 683, 685 (1987). We will now review Defendants' challenges to the Commission's order utilizing the applicable standard of review.

## B. "Suitable Employment"

[1] In their first challenge to the Commission's decision, Defendants argue that the Commission erroneously refused to terminate Plaintiff's workers' compensation benefits because she unjustifiably refused to accept suitable employment. In seeking to persuade us of the merits of this position, Defendants argue that the Commission erred by applying "the suitability standard for permanent post-MMI employment to the temporary pre-MMI CNA position." We do not find Defendant's argument persuasive.

In the workers' compensation context, "[t]he term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9).

The employee seeking compensation under the Act bears "the burden of proving the existence of [her] disability and its extent." In order to support a conclusion of disability, whether temporary or permanent, the Commission must find that the employee has shown: "(1) that [she] was incapable after her injury of earning the same wages she had earned before her injury in the same employment, (2) that [she] was incapable after her injury of earning the same wages she had earned before her injury in any other employment, and (3) that [her] incapacity to earn was caused by [her] injury."

*Clark v. Wal-Mart*, 360 N.C. 41, 43-44, 619 S.E.2d 491, 493 (2005) (quoting *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 378 (1986), and *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982)).

A claimant otherwise entitled to receive workers' compensation benefits may have her benefits suspended or terminated pursuant to N.C. Gen. Stat. § 97-32, which states that, "[i]f an injured employee refuses employment procured for him suitable to his capacity[,] he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified." "The burden is on the employer to show that an employee refused suitable employment. Once the employer makes this showing, the burden shifts to the employee to show that the refusal was justified." *Munns v. Precision Franchising, Inc.*, 196 N.C. App. 315, 317, 674 S.E.2d 430, 433 (2009) (citing *Gordon v. City of Durham*, 153 N.C. App. 782, 787, 571 S.E.2d 48, 51 (2002), and *Moore v. Concrete Supply Co.*, 149 N.C. App. 381, 389-90, 561 S.E.2d 315, 320 (2002)). As a result, the ultimate issue that must be resolved in order to properly apply N.C. Gen. Stat. § 97-32 is a determination of the extent, if any, to which a particular position constitutes "suitable employment."

According to Rule III(G) of the N.C. Industrial Commission Rules for the Utilization of Rehabilitation Professionals in Workers' Compensation Claims:

"[s]uitable employment" means employment in the local labor market or self-employment which is reasonably attainable and which offers an opportunity to restore the worker as soon as possible and as nearly as practicable to pre-injury wage, while giving due consideration to the worker's qualifications (age, education, work experience, physical and mental capacities), impairment,

vocational interests, and aptitudes. No one factor shall be considered solely in determining suitable employment."

Consistently with the Commission's Rules, "[o]ur appellate decisions have defined 'suitable' employment to be any job that a claimant 'is capable of performing considering his age, education, physical limitations, vocational skills, and experience.'" *Shah v. Howard Johnson*, 140 N.C. App. 58, 68, 535 S.E.2d 577, 583 (2000) (quoting *Burwell v. Winn-Dixie Raleigh*, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994)). A "suitable" position must both accurately reflect the claimant's ability to earn wages in the open market and not constitute "make-work:"

> [T]he employer may not rebut the presumption of continuing disability by showing that the employee is capable of earning pre-injury wages in a temporary position, or by creating a position within the employer's own company which is "not ordinarily available in the competitive job market," because such positions do not accurately reflect the employee's capacity to earn wages. "The Workers' Compensation Act does not permit [defendants] to avoid [their] duty to pay compensation by offering an injured employee employment which the employee under normally prevailing market conditions could find nowhere else and which [defendants] could terminate at will or . . . for reasons beyond [their] control."

*Stamey v. Self-Insurance Guar. Ass'n*, 131 N.C. App. 662, 666, 507 S.E.2d 596, 599 (1998) (citing *Daughtry v. Metric Construction Co.*, 115 N.C. App. 354, 358, 446 S.E.2d 590, 593, *disc. review denied*, 338 N.C. 515, 452 S.E.2d 808 (1994), and quoting *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 438-39, 342 S.E.2d 798, 806 (1986)); *see also Saums v. Raleigh Community Hospital*, 346 N.C. 760, 765, 487 S.E.2d 746, 750 (1997) (upholding the Commission's finding that an employee had not refused "suitable employment" because there was "no evidence that employers, other than defendant, would hire plaintiff to do a similar job at a comparable wage"), and *Smith v. Sealed Air Corp.*, 127 N.C. App. 359, 362, 489 S.E.2d 445, 447 (1997) (stating that "the employer must come forward with evidence that others would hire the employee to do a similar job at a comparable wage").

In its order, the Commission concluded, in pertinent part, that:

> 1. . . . . The transitional pre-MMI light duty CNA position that Defendant-Employer offered Plaintiff in November 2008 did not constitute suitable employment. The position paid significantly less than Plaintiff's pre-injury job, and by its definition as a tem-

porary position, it held no opportunity for advancement. Finally, the position clearly was modified to accommodate Plaintiff's work restrictions and was thus make work.

2. An employee's refusal to accept a temporary modified position that is make work is reasonable. . . . Because the proffered job offered by Defendant-Employer was make work, and not available in the competitive job market, Plaintiff was justified in refusing the employment by failing to appear for the day shifts on Tuesday, November 11 and Thursday, November 13, 2008.

3. Defendants have failed to show that Plaintiff unjustifiably refused suitable employment, constructively or otherwise and, as such, are not entitled to have suspended Plaintiff's compensation on those grounds. N.C. Gen. Stat. §97-32.

In challenging these determinations on appeal, Defendants assert that, because Plaintiff had not reached MMI at the time they offered her the light duty CNA position, the Commission should have applied a different, more lenient, standard for the purpose of determining whether Plaintiff refused suitable employment and that the Commission erroneously "assum[ed] that the stringent requirements of 'suitability' set forth in *Peoples* and The Rules for the Utilization of Rehabilitation Professionals apply equally to both permanent employment offered after the employee reaches [MMI] and to temporary light-duty employment offered prior to [MMI]."[2]

MMI is "the point at which an injury has stabilized." *Cross v. Falk Integrated Techs., Inc.*, 190 N.C. App. 274, 282, 661 S.E.2d 249, 255 (2008) (citing *Carpenter v. Industrial Piping Co.*, 73 N.C. App. 309, 311, 326 S.E.2d 328, 330 (1985)). In *Knight v. Wal-Mart Stores, Inc.*, 149 N.C. App. 1, 13-14, 562 S.E.2d 434, 443 (2002), *aff'd*, 357 N.C. 44, 577 S.E.2d 620 (2003), this Court "concluded that the primary significance of the concept of MMI is to delineate a crucial point in time only within the context of a claim for scheduled benefits under N.C. Gen. Stat. § 97-31, and that the concept of MMI does not have any direct bearing upon an employee's right to continue to receive temporary disability benefits once the employee has established a loss of wage-earning capacity pursuant to N.C. Gen. Stat. § 97-29 or § 97-30."

---

2. According to Defendants, the only factors that should be considered in determining whether a light duty position offered to a claimant prior to MMI constitutes suitable employment are whether the position is a "legitimate" one and whether the duties assigned to the position are consistent with the claimant's physical and mental limitations.

In addition, we have also held that "a finding of [MMI] is not the equivalent of a finding that the employee is able to earn the same wage earned prior to injury." *Collins v. Speedway Motor Sports Corp.*, 165 N.C. App. 113, 120, 598 S.E.2d 185, 190-91 (2004) (citation omitted).

As a general proposition, the extent to which a particular claimant has attained MMI is not relevant to his or her entitlement to receive workers' compensation benefits. The Supreme Court "has stated repeatedly that the term 'disability' is not simply a medical question, but includes an assessment of other vocational factors, including age, education, and training. [MMI], which does not include these other aspects of disability as defined by the Workers' Compensation Act, therefore cannot by itself establish a resumption of wage earning capacity." *Russos v. Wheaton Indus.*, 145 N.C. App. 164, 168, 551 S.E.2d 456, 459 (2001), (citing *Hilliard*, 305 N.C. at 595, 290 S.E.2d at 683-84, and *Little v. Food Service*, 33 N.C. App. 742, 743, 236 S.E.2d 801, 802 (1977), *rev'd on other grounds*, 295 N.C. 527, 246 S.E.2d 743 (1978)), *disc. review denied*, 355 N.C. 214, 560 S.E.2d 135 (2002).

According to well-established North Carolina law, since the extent to which a claimant has attained MMI is not determinative of her right to disability benefits, her disability benefits may be terminated before she reaches MMI in the event that he or she has the ability to earn the same wages that she earned before the compensable injury occurred. As this Court stated in *Cross*, "[w]hile an employee may seek a determination of her entitlement to permanent disability benefits under N.C. Gen. Stat. §§ 97-29 or 97-30, or scheduled benefits under N.C. Gen. Stat. § 97-31 only after reaching [MMI], temporary disability benefits may be terminated before an employee reaches [MMI] if that employee is capable of earning the same wages as prior to injury, and thus, unable to prove disability." *Cross*, 190 N.C. App. at 282, 661 S.E.2d at 255 (citing *Effingham v. Kroger Co.*, 149 N.C. App. 105, 114, 561 S.E.2d 287, 294 (2002)). On the other hand, a claimant may continue to receive disability after reaching MMI in the event that she remains unable to earn the same wages that she earned prior to sustaining an employment-related injury. *See, e.g., Foster v. U.S. Airways, Inc.*, 149 N.C. App. 913, 918-19, 563 S.E.2d 235, 239-40 (2002) (expressing disagreement with defendant's argument "that the Commission erred in reinstating plaintiff's award of temporary disability after plaintiff reached MMI" on the grounds that, in *Saums*, "our Supreme Court . . . affirmed the Commission's award of temporary total disability benefits entered after the employee had reached MMI"), *disc. review denied*, 356 N.C. 299, 570 S.E.2d 505 (2002).

Thus, MMI "as a purely medical determination occurs when the employee's physical recovery has reached its peak," so that the extent to which an "employee has reached [MMI] is not necessarily a 'crucial fact upon which the question of plaintiff's right to compensation depends.' " *Walker v. Lake Rim Lawn & Garden*, 155 N.C. App. 709, 717-18, 575 S.E.2d 764, 769 (citing *Carpenter*, 73 N.C. App. at 311, 326 S.E.2d at 330 (1985), *Knight*, 149 N.C. App. at 14, 562 S.E.2d at 443 and *Russos*, 145 N.C. App. at 167-68, 551 S.E.2d at 459, and quoting *Gaines v. Swain & Son, Inc.*, 33 N.C. App. 575, 579, 235 S.E.2d 856, 859 (1977)), *disc. review denied*, 357 N.C. 67, 575 S.E.2d 674 (2003).

The decisions of the Supreme Court and this Court, which have consistently used the same standard to address disability-related claims regardless of whether those claims arose before or after MMI, make no mention of utilizing different standards for making such determinations depending upon whether the claimant is still in the healing period. *See, e.g.*, *Walker*, 155 N.C. App. at 717-18, 575 S.E.2d at 769 (utilizing N.C. Gen. Stat. § 97-32 to evaluate the defendant's assertion that the plaintiff had refused suitable employment despite the fact that the plaintiff had not reached MMI), and *Bailey v. Western Staff Servs.*, 151 N.C. App. 356, 363-64, 566 S.E.2d 509, 514 (2002) (evaluating the suitability of a job offered to the claimant prior to MMI utilizing the same standard applied in other cases). In fact, we have not found any reported decision of this Court or the Supreme Court that adopts the approach advocated by Defendants for use in determining the suitability of employment offered to claimants who had not yet reached MMI.[3] As a result, we find no support in our published workers' compensation jurisprudence for the "different standard" approach advocated by Defendants and believe that the approach adopted by the Commission in this case is consistent with existing North Carolina law.

Although various policy-related justifications can be cited in support of the approach advocated by Defendants, we believe that the extent to which the "different standard" test should be adopted is a question for the General Assembly rather than for this Court. In reaching this conclusion, we note that adoption of the "different standard" approach would require us to answer questions such as (1) At what point after the date of a compensable injury should the pre-MMI

_____

3. In their brief, Defendants contend that "[i]n *Russo v. Food Lion*, [187 N.C. App. 509, 653 S.E.2d 255 (2007) (unpublished opinion),] the . . . Court of Appeals held that the suitability requirements of *Peoples v. Cone Mills* do not apply to situations in which the employee has not reached [MMI]." According to Defendants

standard be applied? (2) Does the applicability of the pre-MMI standard depend upon the duration of the healing period or the degree of injury? (3) How "unsuitable" can proffered employment be before a claimant is entitled to reject the proffered position without risking the loss of his or her workers' compensation benefits? and (4) Would the utilization of the "different standard" approach result in situations in which an employee who has not attained MMI would be required to accept a position which she is entitled to reject after reaching MMI? " 'Weighing these and other public policy considerations is the province of our General Assembly, not this Court[.]' " *Andrews v. Haygood,* 362 N.C. 599, 604-05, 669 S.E.2d 310, 314 (2008) (quoting. *Shaw v. U.S. Airways, Inc.,* 362 N.C. 457, 463, 665 S.E.2d 449, 453 (2008), and citing *Wayne County Citizens Assn. v. Wayne County Bd. of Comrs,* 328 N.C. 24, 29, 399 S.E.2d 311, 314-15 (1991) (other citation omitted). As a result, for all of these reasons, we conclude that the Commission did not err by applying the generally-accepted definition of "suitable employment" in evaluating the Plaintiff's right to reject the "light duty CNA" position at issue in this case.

In urging us to reach a different result, Defendants analyze each of the factors relied upon by the Commission in concluding that the light duty CNA position was not "suitable." Defendants' discussion of this set of issues is, however, predicated on the assumption that the Commission should have utilized the "different standard" approach.[4] Given our decision to refrain from adopting that argument, we con-

---

> The Court held [in *Russo*] that employment prior to [MMI] is intended to be temporary rather than permanent, because the employee is still in the healing period. . . . Accordingly, because light duty pre-MMI employment is by its nature, temporary, the concerns behind the requirement that employment be "suitable" per *Peoples* (i.e., the concern that the employee will be placed in employment that does not accurately reflect his earning capacity) do not exist prior to MMI.

As Defendants acknowledge, *Russo's* status as an unpublished opinion deprives it of precedential effect. In addition, our review of *Russo* indicates that, although noting that the claimant had not reached MMI, the opinion does not engage in the sort of detailed analysis which Defendants deem appropriate. In addition, *Russo* does not cite or discuss either *Walker* or *Bailey.* Moreover, this case is factually distinguishable from *Russo* in that the physicians responsible for treating the plaintiff in *Russo* opined that acceptance of the job at issue there would provide therapeutic benefits for the plaintiff. Defendants have not pointed to any such evidence in the present record. Finally, we are aware of at least one unpublished post-*Russo* decision that utilized the traditional "suitability" standard in a pre-MMI context. *Shupe v. City of Charlotte,* —— N.C. App. ——, 697 S.E.2d 525 (2010), *disc. review denied,* 364 N.C. 435, 702 S.E.2d 490 (2010). As a result, for all of these reasons, we conclude that *Russo* does not control the outcome in this case.

4. Although there are suggestions to the contrary at a couple of points in Defendants' brief, we do not believe that Defendants have contended before this Court that the

clude that Defendants' specific challenges to the Commission's decision lack merit.

In their brief, Defendants contend that the disparity between the pre-injury compensation that Plaintiff earned in her regular CNA job and the compensation rate applicable to the temporary light duty position "would not render the employment unsuitable" because "it is not required that the employment pay the same or greater wages than the pre-injury employment." Although the existence of a wage disparity does not, in and of itself, necessarily compel a conclusion that the light duty CNA position at issue here was "unsuitable," "[t]he disparity between pre-injury and post-injury wages is one factor which may be considered in determining the suitability of post-injury employment" under traditional "suitability" analysis. *Foster*, 149 N.C. App. at 921, 563 S.E.2d at 241 (citing *Dixon v. City of Durham*, 128 N.C. App. 501, 504, 495 S.E.2d 380, 383 (1998)). The light duty CNA position which Plaintiff rejected paid 39% less than Plaintiff's usual wage rate. Defendants have not cited any decision of the Supreme Court or this Court holding that a proffered job was "suitable" in the face of a nearly 40% reduction in the claimant's rate of compensation, and we know of none. We see nothing impermissible about the manner in which the Commission considered the disparity between Plaintiff's pre-injury wage rate and the compensation that she would have received had she accepted the light duty CNA position.

Similarly, Defendants argue that the fact that the light duty CNA position was temporary rather than permanent did not support the Commission's determination that Plaintiff had not been offered "suitable" employment. Defendants' argument to this effect clearly assumes the appropriateness of the "different standard" approach to the resolution of "suitability" issues rather than the approach that the Commission actually utilized. Defendants have not cited any authority suggesting that the temporary nature of the light duty CNA position is irrelevant to a proper "suitability" inquiry, and we know of none. As a result, Defendants' challenge to the Commission's reliance on the temporary nature of the light duty CNA position is, in reality, nothing more than a reiteration of their argument in support the "different standard" approach which we have declined to accept elsewhere in this opinion.

---

Commission erred by failing to find that Plaintiff refused "suitable" employment as that term is construed in *Peoples* and its progeny. As a result, we will not address the extent to which the Commission properly applied the traditional "suitability" standard in this case.

Similarly, Defendants argue that "the modification of the CNA job to accommodate Plaintiff's temporary physical restrictions was minimal" and that the " 'light duty CNA' position is not so heavily modified as to render it make work, especially considering the fact that the job is temporary pre-MMI employment." However, Defendants stated in the 17 November 2008 letter that occupants of the light duty CNA position would be required to perform such tasks as folding laundry and pillow cases, pushing meal carts, sweeping and mopping floors, emptying trash containers, and assisting patients with personal care issues, such as trimming their nails. Although some of these duties may also be performed by individuals occupying regular CNA positions, it is not clear from the record that this is true of the duties assigned to occupants of the light duty CNA position considered in their entirety. Simply put, Defendants have not cited anything in the record listing the duties normally performed by a CNA compared to the duties assigned to occupants of the light duty CNA position, rendering it impossible for us to determine the extent to which the duties assigned to the two positions differ. As a result, Defendants' challenge to the Commission's handling of the "job modification" issue is, in essence, a reiteration of their support for the "different standard" approach which we have declined to adopt.

Finally, Defendants challenge the Commission's determination that Defendants had failed to show that Plaintiff refused suitable employment and that Plaintiff's decision to refuse the light duty CNA position was reasonable. Once again, however, these arguments assume the validity of the "different standard" approach advocated by Defendants. Thus, since all of Defendants' specific challenges to the Commission's decision assume the appropriateness of this "different standard" approach and since we have concluded that this approach does not accurately reflect existing North Carolina law, we conclude that Defendants' challenge to the Commission's "suitability" determination lacks merit.

## D. Reasonable Search for Employment

[2] Secondly, Defendants argue that the Commission erred by concluding that Plaintiff engaged in a reasonable search for employment between 10 November 2006, when she stopped working for Defendant Two Rivers, and 26 November 2006, when Plaintiff obtained employment with Jackson Hewitt. Once again, we are not persuaded by Defendants' argument.

In its order, the Commission found as a fact that:

> Plaintiff went back to work on Saturday, November 15, 2008 and saw that she was not on the schedule. Plaintiff then contacted [her supervisor,] Ms. Cook, who told Plaintiff that if she could not work the transitional duty schedule, she was terminated. Plaintiff understood that she was terminated and immediately began looking for work elsewhere within her restrictions.

This finding is fully consistent with Plaintiff's testimony that she sought other employment after losing her job with Defendant Two Rivers and adequately supports the Commission's determination that "Plaintiff is entitled to temporary total disability benefits . . . from November 10 through November 26, 2008, during which time she engaged in reasonable efforts to look for work within her restrictions but was unable to find it."

In challenging this aspect of the Commission's order, Defendants emphasize a portion of Plaintiff's testimony on cross-examination. After eliciting testimony from Plaintiff to the effect that she had learned about the Jackson Hewitt position from a friend, Defendants asked if Plaintiff had looked for other positions or had tried to find a job that paid more than Jackson Hewitt and obtained a negative response. Based upon this testimony, Defendants argue that Plaintiff did not engage in a reasonable search for employment. However, the testimony in question can be plausibly construed to mean that Plaintiff did not continue to seek even better alternate employment after obtaining the Jackson Hewitt position. As we have already noted, "[u]nder our Workers' Compensation Act, 'the Commission is the fact finding body' " with the Commission serving as " 'the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " *Deese*, 352 N.C. at 115, 530 S.E.2d at 552 (quoting *Brewer v. Trucking Co.*, 256 N.C. 175, 182, 123 S.E.2d 608, 613 (1962), and *Anderson*, 265 N.C. at 433-34, 144 S.E.2d at 274 (1965)). For that reason, the Commission had ample authority to resolve this issue based on Plaintiff's description of her job search on direct examination and a different interpretation of her testimony on cross-examination than that advocated by Defendants. As a result, Defendants are not entitled to relief from the Commission's order based upon this argument.

### E. Evidence of Plaintiff's Partial Disability

[3] Finally, Defendants argue that the Commission erred by failing to conclude that Defendants had successfully rebutted the presumption of disability arising from the fact that Plaintiff obtained alternate

employment at a lower wage rate than she had received during her pre-injury employment with Defendant Two Rivers. Once again, we do not find Defendants' argument persuasive.

The undisputed record evidence established that, after leaving her employment with Defendant Two Rivers, Plaintiff obtained new employment with Jackson Hewitt at a lower wage rate. As Defendants appear to concede, a workers' compensation claimant may establish disability through "the production of evidence that [s]he has obtained other employment at a wage less than that earned prior to the injury." *Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citations omitted). "Such evidence, while not dispositive of disability, shifts the burden to the employer to establish that the employee could have obtained higher earnings." *Larramore v. Richardson Sports, Ltd. Partners*, 141 N.C. App. 250, 259-60, 540 S.E.2d 768, 773 (2000) (citing *Bond v. Foster Masonry, Inc.*, 139 N.C. App. 123, 130, 532 S.E.2d 583, 588 (2000)), *aff'd*, 353 N.C. 520, 546 S.E.2d 87 (2001). In an effort to persuade us that Plaintiff "could have obtained higher earnings," Defendants argue that the testimony of Robert E. Manning, Jr., their rehabilitation specialist, established that Plaintiff's job at Jackson Hewitt did not accurately reflect her earning ability and that Plaintiff was obligated to elicit evidence that rebutted Mr. Manning's testimony.

In its order, the Commission found, in pertinent part, that:

14. [Mr.] Manning [] is a vocational rehabilitation specialist whom Defendants hired in this case. As of March 2009, he located seven entry level positions with employers in the New Bern area. Each of these positions was as a cashier in a retail operation or a teller at a bank. Mr. Manning believed that all of the positions comported with Plaintiff's work restrictions. He further opined that the entry level pay in any of these positions would be about $8.00 per hour but that, with "determination and persistence," Plaintiff could get back to her pre-injury average weekly wage in any of the positions.

15. Mr. Manning also noted that any of the positions he located would require a criminal background check and that each position involved the handling of money. Notably, Plaintiff has a record of seven worthless check charges dating back to 1998, with five convictions and two deferred prosecutions based on the payment of restitution. Six of these charges pre-dated Plaintiff's employment with Defendant-Employer, and the seventh occurred during said employment.

16. Mr. Manning never met with Plaintiff or spoke with her. He also could not say for certain that the positions he found as of March 2009 had been available in November 2008.

As these findings clearly indicate, the Commission considered Mr. Manning's testimony and did not find it persuasive. Given that the fact-finding function in workers' compensation cases is assigned to the Commission rather than the appellate courts and given that the Commission's reasons for failing to credit Mr. Manning's testimony have ample evidentiary support, we conclude that the Commission did not err either by not relying on Mr. Manning's testimony or requiring Plaintiff to rebut it. As a result, Defendants' final challenge to the Commission's order lacks merit.

III. Conclusion

Thus, for the reasons set forth above, we conclude that the Commission did not err in awarding disability and medical benefits to Plaintiff. As a result, the Commission's order should be, and hereby is, affirmed.

AFFIRMED.

Judges ELMORE and STEELMAN concur.