An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-942

NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

ANTOINETTE MORGAN,
    Employee, Plaintiff,

v.

INTERIM HEALTHCARE,
    Employer, SELF-INSURED
    (GALLAGHER BASSETT SERVICES,
    INC., Servicing Agent),
    Defendant.

North Carolina Industrial Commission
I.C. No. 899078

Appeal by plaintiff from opinion and award entered 10 April 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 8 January 2014.

*Hyler & Lopez, P.A., by Robert J. Lopez, for plaintiff-appellant.*

*Brooks, Stevens & Pope, P.A., by Ginny P. Lanier, for defendant-appellee.*

BRYANT, Judge.

Where there was sufficient evidence that plaintiff reached maximum medical improvement in January 2009, and that plaintiff was offered but unjustifiably refused suitable employment, we affirm the opinion and award of the Full Commission finding and

concluding that plaintiff is not entitled to ongoing disability benefits.

Plaintiff-employee Antoinette Morgan worked as a Certified Nursing Assistant with Defendant employer Interim Healthcare Services where she assisted patients in their homes. On 10 January 2008 and again on 18 January 2008 while assisting a patient, plaintiff injured her back and hip. The injury, diagnosed as a paralumbar strain, was reported to defendant and plaintiff's claim was accepted pursuant to defendant's Form 60 as a compensable injury. Plaintiff's average weekly compensation rate was determined to be $232.78. On 29 April 2010, plaintiff filed a request that the claim be assigned for hearing due to a disagreement about plaintiff's entitlement to indemnity and medical benefits. On 6 September 2011, the matter was heard before Deputy Commissioner Kim Ledford. In an order entered 18 October 2012, Deputy Commissioner Ledford denied plaintiff's claim for further medical compensation, awarding compensation at a rate of $232.78 per week for six weeks only. Plaintiff appealed the deputy commissioner's order and award to the Full Commission.

The matter was reviewed by the Full Commission (the Commission) which entered an opinion and award finding that

between 10 January 2008 and April 2010, plaintiff saw ten physicians in regard to symptoms stemming from her compensable injury. On 30 April 2008, less than four months after plaintiff's compensable injury, she was examined by Dr. James Hoski, an orthopaedic surgeon with Spine Carolina. "Dr. Hoski found no objective findings to support Plaintiff's complaints of pain." While Dr. Hoski referred plaintiff to a pain management physician, he recommended that plaintiff continue working four hours per day with no patient transfers, bending, squatting, or lifting more than five pounds. In October 2008, plaintiff sought a second opinion from orthopaedic specialist Dr. Stephen David. In November 2008, Dr. David assessed plaintiff at maximum medical improvement for the injury to her back from which the workers' compensation claim stemmed. Dr. David assigned permanent work restrictions of eight hour shifts, alternating between sitting and standing with limited bending, stooping, and twisting, and no lifting, pushing or pulling more than 10 pounds. On 5 January 2009, Dr. David assigned plaintiff a two percent permanent impairment rating to her spine and discharged her from his care. After plaintiff received permanent work restrictions, defendant twice offered her a full-time clerical support position. Plaintiff accepted the position

the second time it was offered but did not show up for work. The day after she was to report to work, plaintiff went to the Asheville Family Health Center. She requested a note restricting her from work for the previous day. Defendant stated that regardless of the out-of-work note, plaintiff violated a zero tolerance policy by failing to notify defendant she could not come to work, and plaintiff was terminated from defendant's employment. In April 2010, plaintiff was receiving care from her primary care physician, Dr. Coin, and continued to complain of left-side body symptoms. Dr. Coin "considered the possibility that many of Plaintiff's body symptoms were manifestations of her emotions . . . ."

The Commission concluded that a preponderance of the evidence established plaintiff had reached maximum medical improvement with respect to her compensable injury by 5 January 2009. "Defendant has provided all medical treatment reasonably required to effect a cure or give relief, and Plaintiff is not entitled to further medical treatment under this claim." "Plaintiff unjustifiably refused suitable employment offered to her by Defendant in December 2008 and again in January 2009. Plaintiff is not entitled to compensation during the continuation of her refusal." The Commission denied plaintiff's

claim for further medical compensation and temporary total disability, and affirmed the deputy commissioner's award of $232.78 per week for six weeks for plaintiff's two percent impairment to her back.  Plaintiff appeals.

_____

On appeal, plaintiff raises the following four issues: whether the Commission erred by finding and concluding that plaintiff (I) was at maximum medical improvement; (II) was offered suitable employment; (III) refused suitable employment; and (IV) was not entitled to further ongoing disability benefits.

### Standard of review

> This Court's review is limited to a determination of (1) whether the Commission's findings of fact are supported by competent evidence, and (2) whether the Commissioner's conclusions of law are supported by the findings of fact. The Commission's findings of fact are conclusive on appeal if supported by competent evidence, even where there is evidence to support contrary findings.  The Commission's conclusions of law, however, are reviewable *de novo* by this Court. The Commission is the sole judge of the credibility of the witnesses and the weight accorded to their testimony.

*Meares v. Dana Corp./Wix Div.*, 172 N.C. App. 291, 292, 615 S.E.2d 912, 915 (2005) (citation and quotations omitted).

"Unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal." *Allred v. Exceptional Landscapes, Inc.*, ___ N.C. App. ___, ___, 743 S.E.2d 48, 51 (2013) (citation omitted). However, during our review of challenged findings of fact, we do not reweigh the evidence. *See Bishop v. Ingles Markets, Inc.*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (filed April 15, 2014) (No.COA13-1102) (citation omitted).

*I*

Plaintiff first argues the Commission erred by finding that she reached maximum medical improvement (MMI) by January 2009. Plaintiff contends that while her treating physicians did not recommend surgical procedures to address her injury, she had been referred to pain management specialists for evaluation and treatment. And, because there were still courses of treatment available to decrease or help manage her pain, plaintiff contends she was not yet at MMI. We disagree.

> MMI as a purely medical determination occurs when the employee's physical recovery has reached its peak, so that the extent to which an employee has reached MMI is not necessarily a crucial fact upon which the question of plaintiff's right to compensation depends.
>
> The decisions of the Supreme Court and this Court, which have consistently used the same

> standard to address disability-related claims regardless of whether those claims arose before or after MMI, make no mention of utilizing different standards for making such determinations depending upon whether the claimant is still in the healing period.

*Wynn v. United Health Servs./Two Rivers Health-Trent Campus*, 214 N.C. App. 69, 78, 716 S.E.2d 373, 381—82 (2011) (citing *Walker v. Lake Rim Lawn & Garden*, 155 N.C. App. 709, 717—18, 575 S.E.2d 764, 769 (utilizing N.C. Gen. Stat. § 97-32 to evaluate the defendant's assertion that the plaintiff had refused suitable employment despite the fact that the plaintiff had not reached MMI), and *Bailey v. Western Staff Servs.*, 151 N.C. App. 356, 363—64, 566 S.E.2d 509, 514 (2002) (evaluating the suitability of a job offered to the claimant prior to MMI utilizing the same standard applied in other cases)) (citations and quotations omitted).

In its findings of fact, the Commission acknowledged the medical assessments made by Drs. Hansen, Hoski, and David but gave the greatest weight to the testimony of Dr. David. Plaintiff challenged the Commission's finding of fact premised on Dr. David's testimony that "Plaintiff reached maximum medical improvement [(MMI)] by January 5, 2009 and retains a two percent permanent impairment to her back as a result of the January 2008 injuries." Though not specifically challenged, the Commission,

taking into account the testimony of the doctors, further found that plaintiff's physical complaints had a non-organic basis: "[i]t appears that Plaintiff may suffer from a psychological problem such as a somatization disorder. However, this has not been shown to have been caused by Plaintiff's work-related accidents."

Other findings of fact show that in October 2008, plaintiff was seen by Dr. David, an orthopaedic specialist, working with the Blue Ridge Bone & Joint Clinic.

> 22. . . . Dr. David reviewed Plaintiff's x-rays and MRI results and saw no evidence of scoliosis, spondylolysis or spondylolisthesis, as well as no indications of neurologic impingement or disc herniation. The MRI showed only mild pre-existing facet arthropathy at L4-5 and L5-S1. The examination showed no neurological deficits, only mild tenderness over the paraspinal musculature, and subjective decreased sensation of the left thigh and left leg, which could not be objectively verified. The examination was also positive for Waddell's Signs. Dr. David was of the opinion that Plaintiff might have some irritation around the piriformis, and he referred her for a piriformis block . . . because it did not appear that Plaintiff's pain was from her back.

> 23. On October 30, 2008, Plaintiff underwent a sciatic nerve distribution block to the piriformis muscle . . . . Plaintiff returned to Dr. David and advised that the piriformis injection did not help her pain. . . . As of this visit, Dr. David assessed

> plaintiff at maximum medical improvement from her workers' compensation claim as to her back, and he recommended that Plaintiff undergo a functional capacity evaluation (FCE). . . .
>
> . . .
>
> 25. . . . [Dr. David] reviewed the FCE and noted that there were variable levels of physical effort on Plaintiff's part, such that the FCE was neither reliable nor helpful in delineating Plaintiff's functional status. Dr. David set permanent work restrictions of limited bending, stooping and twisting, no lifting, pushing or pulling more than 10 pounds, and alternate sitting and standing. . . .
>
> . . .
>
> 30. . . . Dr. David noted that the FCE would allow Plaintiff to work an 8 hour day.

Dr. David's deposition testimony supports the Commission's finding of fact which plaintiff challenges.

Based on these findings of fact, the Commission concluded that "[a] preponderance of the evidence in view of the entire record establishes that by January 5, 2009, Plaintiff had reached maximum medical improvement with respect to her compensable injury by accident." As Dr. David's deposition testimony supports the Commission's findings of fact and those findings support its conclusion that plaintiff reached MMI as to

the compensable injury to her back by 5 January 2009, we overrule plaintiff's argument.

## *II & III*

Plaintiff next argues the Commission erred in finding that defendant offered plaintiff "suitable employment" and that plaintiff's refusal was unjustified. Plaintiff contends the evidence does not support a finding that the job duties were within the scope of her physical restrictions and as to her termination from employment, that defendant failed to establish that her termination was unrelated to her disability. We disagree.

"If an injured employee refuses suitable employment . . ., the employee shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified." N.C. Gen. Stat. § 97-32 (2013). "'Suitable employment' is defined as any job that a claimant is capable of performing considering his age, education, physical limitations, vocational skills and experience." *Munns v. Precision Franchising, Inc.*, 196 N.C. App. 315, 317, 674 S.E.2d 430, 433 (2009) (citation omitted); *see also* N.C. Gen. Stat. § 97-2(22) (2013) (defining suitable employment).

> A "suitable" position must both accurately
> reflect the claimant's ability to earn wages
> in the open market and not constitute "make-
> work:"
>
> > . . . "The Workers' Compensation Act
> > does not permit [the] defendants to
> > avoid their duty to pay compensation by
> > offering an injured employee employment
> > which the employee under normally
> > prevailing market conditions could find
> > nowhere else and which [the] defendants
> > could terminate at will or for reasons
> > beyond their control."

*Wynn*, 214 N.C. App. at 75, 716 S.E.2d at 380 (citations omitted). "If other employers would not hire the employee with the employee's limitations . . . or if the proffered employment is so modified because of the employee's limitations that it is not ordinarily available in the competitive job market, the job is 'make work' and is not competitive." *Precision Franchising*, 196 N.C. App. at 319, 674 S.E.2d at 434 (citation and quotations omitted). The burden is on the employer to show that the job offered meets the definition of suitable employment. *See id.* at 318, 674 S.E.2d at 433.

Here, the Commission made the following challenged finding of fact:

> When Plaintiff was released by Dr. David to
> return to light duty work in December 2008,
> Ms. King and other personnel with Defendant
> identified a job position that would include
> light duty work in the office and

> accommodate her work restrictions. The position offered to Plaintiff was the Clerical Support position, which is a position for which Defendant regularly hired and which Plaintiff could have held indefinitely. The position was not simply made up to accommodate Plaintiff's restrictions.

We look to the evidence of record for support. But, initially, we note the Commission's finding of fact regarding plaintiff's physician-imposed work restrictions: "Dr. David set permanent work restrictions of limited bending, stooping and twisting, no lifting, pushing or pulling more than 10 pounds, and alternate sitting and standing." "[Dr. David] had no medical indication that Plaintiff could not perform work within the restrictions given to her, as they were consistent with activities of daily living. Dr. David stated that the restrictions he assigned plaintiff represent the minimum she was able to perform."

Chief Executive Officer of Interim Healthcare, Delores King, testified that following plaintiff's January 2008 compensable injury, "[p]laintiff worked in a light duty capacity in the office filing, answering telephones, and performing other clerical duties as needed." Plaintiff worked for four hours a day. King testified as follows with regard to the offer for a full-time clerical support position:

> A. This is a job offer by Shelly Schaffer,

who was the director of professional services, offering a full time – a full-time job, forty hours a week, that – within the limits of her restrictions. . . .

. . .

Q. Now, the job that's being offered, is this a position that the company regularly has available for hire, to hire people in?

A. Yes, it is.

Q. So it was not a position that was just made up for [plaintiff]?

A. Was this position – this is a position that we normally would have had in the office, yes.

. . .

Q. And the position itself, then was there an opening for the position that you were offering, the full-time position that you were offering [plaintiff]?

A. What I did at the time was I had two part-time people who worked . . . .

. . . We have peak times when things are busy. So what we did do at that time is extended the hours of the weekend people, and extended [a part-time person's hours]. But we still had a gap where we needed somebody to fill in for those, because we had some overtime involved. So we – [plaintiff] filled that role.

The evidence of record supports the Commission's finding that the job requirements of the position offered plaintiff included light duty work in an office consistent with plaintiff's physician-imposed work restrictions and it was a position for which defendant regularly hired. Defendant's job offer was not "make work." Therefore, we overrule plaintiff's argument that the employment offered was "make work" and not suitable employment.

*Refusal of suitable employment*

Plaintiff further contends defendant failed to establish as grounds for termination that her conduct amounted to misconduct or fault.

> [W]here an employee, who has sustained a compensable injury and has been provided light duty or rehabilitative employment, is terminated from such employment for misconduct or other fault on the part of the employee, . . . the test is whether the employee's loss of, or diminution in, wages is attributable to the wrongful act resulting in loss of employment, in which case benefits will be barred, or whether such loss or diminution in earning capacity is due to the employee's work-related disability, in which case the employee will be entitled to benefits for such disability.

*Graham v. Masonry Reinforcing Corp. of Am.*, 188 N.C. App. 755, 762, 656 S.E.2d 676, 681 (2008) (citation omitted).

On 23 December 2008, plaintiff met with Shelly Schaffer, RN, the Director of Professional Services for Interim Healthcare. Schaffer presented plaintiff with a formal offer for a full-time Clerical Support position. Plaintiff was given until 26 December 2008 to accept the position but did not respond. By letter dated 5 January 2009, Schaffer again offered plaintiff a full-time Clerical Support position, instructing plaintiff to respond to the offer by 15 January 2009. On 15 January 2009, plaintiff notified defendant that she accepted the job offer but that she had a note from the Asheville Family Health Centers excusing her from work through 16 January.

> 38. Plaintiff was expected to begin work with Defendant as an office assistant on January 19, 2009. After Plaintiff failed to call out of work or show up, she was terminated pursuant to Defendant's established company policy. Via a letter from Ms. King dated January 23, 2009, Defendant advised Plaintiff that Defendant expected Plaintiff to show up for work on January 19, 2009 and that her failure to do so or to maintain contact with Defendant resulted in forfeiture of her employment.

> 39. Ms. King testified that because Defendant is a healthcare business, it has a very strict attendance policy about which all employees are informed. Employees sign a policy acknowledging that termination is immediate in the event that they do not show up for work. . . . Ms. King explained that Defendant will be flexible in the event an employee is sick or has another legitimate

problem, but if an employee simply does not show up for work or does not call, the employee is immediately terminated.

In her deposition, King testified "[t]o get fired, you had to be dishonest, you had to be insubordinate, or you had to be no-show."

43. On January 19, 2009, Plaintiff returned to Asheville Family Health Centers. Plaintiff was not evaluated, rather, she requested an out of work note to retroactively take her out of work on January 17, 2009. . . . On January 20, 2009, [an RAC nurse] wrote a second out of work note, without any accompanying evaluation of Plaintiff, taking Plaintiff out of work from January 17, 2009 through January 23, 2009. . . .

. . .

48. . . . Dr. Clemenzi[, with Asheville Family Health Centers,] testified that "unfortunately" she and the clinic staff give out of work notes to patients "pretty freely." Dr. Clemenzi further testified that she gives out work notes to people who she thinks could be working.

We find that the record evidence supports the Commission's findings of fact, and we affirm the Commission's conclusion that plaintiff unjustifiably refused suitable employment. Accordingly, we overrule plaintiff's argument.

*IV*

Lastly, plaintiff argues that even if the Commission were to find that plaintiff unjustifiably refused suitable employment, plaintiff is nevertheless entitled to ongoing disability benefits. Plaintiff contends that if work-related injuries prevented her from performing alternative duties or finding comparable employment opportunities, she would be entitled to benefits. We disagree.

"[T]he *Seagraves* rule aims to provide a means by which the Industrial Commission can determine if the circumstances surrounding a termination warrant preclusion or discontinuation of injury-related benefits." *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 495, 597 S.E.2d 695, 700 (2004) (referencing *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 472 S.E.2d 397 (1996)). "[U]nder the *Seagraves*' test, to bar payment of benefits, an employer must demonstrate initially that: (1) the employee was terminated for misconduct; (2) the same misconduct would have resulted in the termination of a nondisabled employee; and (3) the termination was unrelated to the employee's compensable injury." *Id.* at 493, 597 S.E.2d at 699 (citing *Seagraves*, 123 N.C. App. at 234, 472 S.E.2d at 401).

As discussed in issues II and III, plaintiff's termination was based on her failure to report to work without any prior

notification to defendant, conduct which violated defendant's employment policy. Chief Executive Officer King testified that all employees are informed that Interim Healthcare has a strict attendance policy and that employees sign a policy acknowledging that termination of employment is immediate in the event the employee fails to show-up for work absent notice. Plaintiff was on notice that her failure to report to work absent any notification to defendant would result in her termination. This failure to notify defendant about plaintiff's need to be absent from work was not related to plaintiff's compensable injury. Though not dispositive of this last point, we note that in plaintiff's brief to this Court, she states, "[p]laintiff did not notify her employer herself as she was not awake to call them . . . ." The record provides no indication that work-related injuries prevented plaintiff from performing the tasks required by the position, tasks which were within her work restrictions. Thus, defendant has provided sufficient evidence to support the Commission's conclusion that plaintiff unjustifiably refused suitable work.

An employer's successful demonstration of constructive refusal to perform suitable work by an employee can serve as a bar to benefits for lost earnings, "unless the employee is then

able to show that his or her inability to find or hold other employment ... at a wage comparable to that earned prior to the injury is due to the work-related disability." *Id.* at 493—94, 597 S.E.2d at 699 (citation and quotations omitted).

Plaintiff contends that she is entitled to ongoing benefits because her work related injuries have prevented her from either performing alternative duties or finding comparable employment opportunities. Plaintiff contends that "even if [she was] capable of some work, seeking and finding employment within her very limited sedentary / light duty work restrictions would be futile and unrealistic . . . ." We disagree.

The Commission made the following unchallenged finding of fact:

> Plaintiff was 47 years of age. She has a high school education and one and one-half years of college, as well as several continuing education clerical certificates from community college. Her employment history includes . . . clerical accounts payable clerk work for a department store for several years, . . . clerical work for a janitorial services business for approximately 10 years, . . . and a clerical work for a doctor's office for approximately eight years.

Following plaintiff's January 2008 injury, plaintiff "worked in a light duty capacity in the office filing, answering telephones, and performing other clerical duties . . . ." The

Commission also found that "Plaintiff has not looked for work since her termination by Defendant in January 2009." On these findings, the Commission drew the following conclusion:

> [t]he greater weight of evidence fails to show that Plaintiff continues to be unable to earn wages in the same or any employment. Plaintiff has refused suitable employment and has otherwise made no effort to work under reasonable restrictions. Therefore, she is not entitled to any compensation pursuant to N.C. Gen. Stat. ' 97-29 or N.C. Gen. Stat. ' 97-30.

(citations omitted). Based on these unchallenged findings of fact, we affirm the Commission's conclusion that plaintiff was unable to show her inability to find or hold employment at a wage comparable to her pre-injury wage was due to her work-related disability. Therefore, plaintiff is not entitled to ongoing disability benefits. Accordingly, plaintiff's argument is overruled.

Affirmed.

Judges CALABRIA and GEER concur.

Report per Rule 30(e).